43 Cal.Rptr.3d 148 (2006)
139 Cal.App.4th 659
Timothy PAULUS, Plaintiff and Appellant,
v.
BOB LYNCH FORD, INC., et al., Defendants and Respondents.
No. H028629.
Court of Appeal, Sixth District.
May 17, 2006.
*152 Sean B. Absher, James M. Brennan, Stradling, Yocca, Carlson & Rauth, San Francisco, for Plaintiff and Appellant.
Timothy C. Davis, Damien P. Lillis, The Davis Law Firm, San Francisco, for Defendants and Respondents.
DUFFY, J.
In an earlier lawsuit brought in 2003 (the prior suit), Timothy Paulus was sued by his competitor in an unsuccessful attempt to prevent him from developing a Ford automobile dealership in Morgan Hill, California. That prior suit was brought under Business and Professions Code section 17200 et seq. (the unfair competition law (UCL))[1] by an established, Gilroy-based Ford automobile dealership and its president/shareholder (Bob Lynch Ford, Inc. and Scott Lynch, respectively, and hereafter, collectively, Lynch).[2] After filing a series of demurrers, Paulus ultimately prevailed in the prior suit after the court sustained his demurrer without leave to amend.
In September 2004, Paulus brought this action against Lynch for claims arising out of the prior suit, including a cause of action for malicious prosecution. Lynch brought a special motion to strike Paulus's complaint under the anti-SLAPP (strategic lawsuits against public participation) statute, Code of Civil Procedure section *153 425.16.[3] After granting the motion, the court awarded Lynch $40,000 and $1,819.96 in attorney fees and costs, respectively.
Paulus appeals from these two orders. He claims (among other things) that the motion to strike should have been denied because he presented a prima facie case of malicious prosecution  including showing that Lynch lacked probable cause to bring the prior suit and that Lynch prosecuted it with malice. We conclude that Paulus did not meet his burden under section 425.16 of demonstrating the probability that he would prevail on the merits of any of his claims. Specifically, Paulus did not show that Lynch lacked probable cause to bring the prior suit  an essential element of a malicious prosecution claim  because (1) malicious prosecution is a disfavored tort that is maintainable only if the underlying suit was one that no reasonable attorney would believe to be objectively tenable, (2) the UCL is a broad statute intended to protect both consumers and competitors against business practices that are unlawful, unfair or fraudulent, and (3) no authority expressly precluded the bringing of Lynch's UCL claim under the circumstances alleged in the prior suit. In addition, Paulus forfeited any challenge to the granting of the motion to strike his claims for abuse of process and intentional interference with contractual relations; in any event, he made no prima facie showing below in support of these claims.
We therefore find no error. Accordingly, we affirm the order granting the anti-SLAPP motion to strike. We also affirm the order awarding attorney fees and costs to Lynch.

PROCEDURAL HISTORY

I. Prior Suit

Lynch filed suit against Paulus and others on July 23, 2003. The complaint named the City of Morgan Hill (City) and related City entities and alleged that Lynch was "[a]cting as [an] injured competitor[] and as private attorney[] general" in bringing suit to enforce the UCL. In general, the complaint alleged that Paulus sought to establish a Ford automobile dealership in Morgan Hill on an 8.65 acre site (Dealership); the City Council approved several land-use applications submitted by Paulus for the Dealership; and that approval of the applications violated the Planning and Zoning Law (Gov.Code, § 65000 et seq.), the City's general plan, and the California Environmental Quality Act (CEQA, Pub. Res.Code, § 21000 et seq.). Lynch sought injunctive relief and mandamus to prevent development of the Dealership and to void the land-use-application approvals.
Lynch thereafter filed a first amended complaint. Again alleging that it had brought suit both "as [an] injured competitor[] and . . . as private attorney[] general," Lynch invoked the UCL for alleged violations of Planning and Zoning Law, the City's general plan, CEQA, and "[section] 1094.5, the statu[t]e requiring written finding[s] for quasi-judicial administrative decisions." The first amended complaint sought injunctive relief and mandamus.
Paulus, City, and related City entities filed jointly a demurrer to the first amended complaint. The demurring defendants argued, inter alia, that (1) Lynch had no legal standing to challenge the City's approval of the land-use applications for the Dealership, because it was not a "beneficially *154 interested" party as required for administrative mandamus proceedings brought under section 1086 in general and under section 1094.5 in particular; (2) public entities such as the City are immune from potential liability under the UCL; and (3) Paulus's acts taken in obtaining approval of the land-use applications did not constitute unfair business practices under the UCL. The court rejected the first and third arguments[4] of the demurring defendants and adopted the second argument; accordingly, it sustained the demurrer of the City and related City entities and otherwise overruled the demurrer.
Lynch filed a second amended complaint. Lynch again alleged that it had brought the action both as an injured competitor and "for the interests of the general public as private attorney[] general . . . to enforce the [UCL]" for alleged violations of section 1094.5, the Planning and Zoning Law, the City's general plan, and CEQA. The pleading contained a new allegation that "the City Council authorized the City Manager to do everything necessary and appropriate to execute a development agreement with the private defendants which development agreement may result in the City paying the private defendants up to $1,225,000.00 of partial sales tax rebates over a period of 10 years," and that these potential rebates significantly threatened competition between Lynch and Paulus.[5]
Paulus, the City, and the related City entities filed a demurrer to the second amended complaint, arguing that (1) the City and its related entities were immune from liability under the UCL; and (2) Lynch failed to allege facts that Paulus had engaged in unfair competition under the UCL by committing unlawful business practices  the allegation was merely that Paulus had performed the lawful act of submitting a development application based upon land use approvals granted by the City.[6] The court sustained the demurrer of the City and related City entities without leave to amend and sustained Paulus's demurrer with leave to amend.
Lynch filed a third amended complaint. It contained substantially the same allegations that had appeared in the second amended complaint. The new pleading did allege more specifically that Lynch had brought the action under the UCL to address, among other alleged violations, "[a] discriminatory government subsidy significantly threatening competition." The third amended complaint also alleged for the first time that Paulus had conspired *155 with, and aided and abetted the "municipal defendants" through his submission of the land use applications and by obtaining the application approvals that Lynch claimed were unlawful.
Paulus filed a demurrer to the third amended complaint, which Lynch opposed. Paulus argued that Lynch had failed to state a claim under the UCL for unfair competition based upon either alleged unfair or unlawful business acts or practices. The court sustained this demurrer without leave to amend. Pursuant to the parties' stipulation, the court dismissed the action on March 30, 2004, following its order sustaining the demurrer.
Lynch filed a petition for writ of supersedeas and a petition for an emergency stay with this court. We denied both petitions on April 16, 2004 (H027269). Lynch sought review by the Supreme Court, which was denied on May 19, 2004.

II. The Present Action

On September 21, 2004, Paulus filed the present action against Lynch. The unverified complaint contained three claims: malicious prosecution, abuse of process, and intentional interference with contractual relations. Paulus alleged that the prior suit was filed by Lynch against Paulus; was concluded in his favor; was brought and prosecuted without probable cause; and was brought and prosecuted by Lynch maliciously. Paulus also alleged that Lynch "misused the legal system by bringing and prosecuting" the prior suit and that by doing so, Lynch interfered with Paulus's contract to purchase land to establish the Dealership.
Lynch filed a special motion to strike the complaint under section 425.16. It contended that (1) Paulus's suit arose out of Lynch's protected activity (i.e., petitioning the court through the prior suit); (2) Paulus bore the burden under the anti-SLAPP statute of presenting admissible evidence showing a reasonable probability that he would prevail on his claims; (3) the malicious prosecution claim was without merit because Lynch had probable cause for maintaining the prior action; and (4) the abuse of process and interference with contract claims were without merit because they were barred by the litigation privilege.[7]
In his opposition to the motion to strike, Paulus focused on the sufficiency of his malicious prosecution claim. Paulus argued that (1) the prior suit was undeniably terminated in Paulus's favor, thereby satisfying one malicious prosecution element; (2) the prior suit was founded upon legal theories that were patently without merit and Lynch therefore lacked probable cause in prosecuting the prior suit; (3) Lynch acted with malice in initiating and prosecuting the prior suit; and (4) because the motion to strike was frivolous, Paulus should be awarded attorney fees and costs.
Paulus filed two declarations with his opposition to the anti-SLAPP motion. Paulus declared that (1) he had sustained damages as a result of the prior suit, including lost profits and expenses associated with delay in completing the transaction in which he acquired the property for the Dealership; (2) Lynch's Ford dealership in Gilroy was in direct competition with Paulus's Dealership; (3) an existing automobile dealership may challenge the creation of a new dealership within a 10-mile radius by filing a protest with the New Motor Vehicle Board; (4) Paulus had established the Dealership outside of this 10-mile radius *156 so that it would not be subject to such a protest by Lynch; and (5) he believed that Lynch had brought the prior suit as a subterfuge because it was unable to challenge Paulus's Dealership through an administrative protest. Attached to his attorney's declaration were copies of two letters written to Lynch's counsel requesting that the prior suit be dismissed, along with a copy of one letter in response from Lynch's counsel.
On January 25, 2005, the court heard argument and took the matter under submission. It thereafter granted the motion to strike the complaint. In striking the complaint, the court reasoned that Paulus had failed to meet his burden of showing a probability that he would prevail on his complaint. Specifically, the court held that Paulus had not established by competent evidence that Lynch lacked probable cause and acted with malice in prosecuting the prior action. The court also held that Lynch was entitled to its attorney fees and costs associated with the motion pursuant to section 425.16, subdivision (c).
Lynch filed a motion for attorney fees and costs, seeking an award of $60,786 in fees and $1,694.96 in costs.[8] Paulus filed opposition to the motion, noting that he did not dispute Lynch's entitlement to an award of attorney fees, but that he objected to a claimed "lack of documentation supporting the award." The court granted Lynch's motion and awarded it $40,000 in attorney fees and $1,819.96 in costs. Paulus filed a timely notice of appeal from the orders striking the complaint and awarding attorney fees and costs.

DISCUSSION

I. Issues On Appeal

Paulus raises the following issues in this appeal:
1. Whether the trial court erred by granting Lynch's anti-SLAPP motion because Paulus presented a prima facie case of malicious prosecution.
2. Whether the trial court erred by granting the motion to strike as to Paulus's abuse of process claim.
3. Whether the trial court erred by granting the motion to strike as to Paulus's intentional interference with contractual relations claim.[9]
4. Whether the trial court erred by awarding Lynch attorney fees and costs as the party prevailing on the anti-SLAPP motion.
We address each of these claims of error below.

II. Anti-SLAPP Motions

A "SLAPP" suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights. [Citation.]" (Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 815, fn. 2, 33 Cal. Rptr.2d 446, disapproved on other grounds in Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 68, 124 Cal.Rptr.2d 507, 52 P.3d 685 (Equilon).) In other words, a lawsuit that is a SLAPP arises from constitutionally protected speech or petitioning activity that "lacks even minimal merit." (Navellier v. Sletten (2002) 29 Cal.4th 82, 89, 124 Cal.Rptr.2d 530, 52 P.3d 703 (Navellier).)
*157 SLAPP suits may be disposed of summarily by a special motion to strike under section 425.16, commonly known as an "anti-SLAPP motion." The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) As is relevant to this appeal, the statute defines "`act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" to "include[]:(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. . . ." (Id., subd. (e).)
A motion to strike under section 425.16 is analyzed and resolved by "the court . . . engag[ing] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken `in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (Equilon, supra, 29 Cal.4th at p. 67, 124 Cal.Rptr.2d 507, 52 P.3d 685.) Thus, "[o]nly a cause of action that satisfies both prongs of the anti-SLAPP statute  i.e., that arises from protected speech or petitioning and lacks even minimal merit  is a SLAPP, subject to being stricken under the statute." (Navellier, supra, 29 Cal.4th at p. 89, 124 Cal.Rptr.2d 530, 52 P.3d 703.)
The anti-SLAPP statute, as specified in a 1997 amendment, "shall be construed broadly." (§ 425.16, subd. (a), as amended by Stats.1997, ch. 271, § 1.) In keeping with this policy, the Supreme Court has rejected a number of arguments deemed to have been unwarranted, narrow constructions of section 425.16. (See, e.g., Jarrow Formulas, Inc. v. LaMarche (2003) 31 Cal.4th 728, 3 Cal.Rptr.3d 636, 74 P.3d 737 (Jarrow Formulas) [malicious prosecution claim potentially subject to anti-SLAPP statute, rejecting contention that such a construction of section 425.16 would deprive malicious prosecution victims of a remedy]; Equilon, supra, 29 Cal.4th at pp. 66-67, 124 Cal.Rptr.2d 507, 52 P.3d 685 [defendant making anti-SLAPP motion need not demonstrate that plaintiff brought action claimed to be SLAPP with intent of chilling defendant's exercise of free speech or petition rights]; City of Cotati v. Cashman (2002) 29 Cal.4th 69, 75, 124 Cal.Rptr.2d 519, 52 P.3d 695 [defendant not required to show that action claimed to be SLAPP had actual effect of chilling defendant's exercise of free speech or petition rights]; Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1109, 81 Cal. Rptr.2d 471, 969 P.2d 564 [anti-SLAPP statute does not require defendant to show separately that its constitutionally protected activity "concern[s] an issue of public significance"].)

*158 III. Appellate Review Of Order Granting Anti-SLAPP Motion

An order granting an anti-SLAPP motion to strike is a proper subject for appeal. (§ 425.16, subd. (i); see also Kyle v. Carmon (1999) 71 Cal.App.4th 901, 906, 84 Cal.Rptr.2d 303.) We review de novo a trial court's ruling on a motion to strike under section 425.16 by "conducting an independent review of the entire record. [Citations.]" (HMS Capital, Inc. v. Lawyers Title Co. (2004) 118 Cal.App.4th 204, 212, 12 Cal.Rptr.3d 786; see also Siam v. Kizilbash (2005) 130 Cal.App.4th 1563, 1569, 31 Cal.Rptr.3d 368.)
Thus, our review is conducted in the same manner as the trial court in considering an anti-SLAPP motion. In determining whether the defendant (Lynch) has met its initial burden of establishing that the plaintiff's (Paulus's) action arises from protected activity, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see also City of Cotati v. Cashman, supra, 29 Cal.4th at p. 79, 124 Cal.Rptr.2d 519, 52 P.3d 695; Navellier, supra, 29 Cal.4th at p. 89, 124 Cal.Rptr.2d 530, 52 P.3d 703.) The second prong  i.e., whether the plaintiff (Paulus) has shown a probability of prevailing on the merits  is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions. (ComputerXpress, Inc. v. Jackson (2001) 93 Cal.App.4th 993, 1010, 113 Cal. Rptr.2d 625.) "[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have `"stated and substantiated a legally sufficient claim."' [Citations.] `Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' [Citations.]" (Navellier, supra, at pp. 88-89, 124 Cal.Rptr.2d 530, 52 P.3d 703.)
As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings. (Church of Scientology v. Wollersheim (1996) 42 Cal.App.4th 628, 655, 49 Cal. Rptr.2d 620, disapproved on other grounds in Equilon, supra, 29 Cal.4th at p. 68, fn. 5, 124 Cal.Rptr.2d 507, 52 P.3d 685.) The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence. (ComputerXpress, Inc. v. Jackson, supra, 93 Cal.App.4th at p. 1010, 113 Cal.Rptr.2d 625.) In reviewing the plaintiff's evidence, the court does not weigh it; rather, it simply determines whether the plaintiff has made a prima facie showing of facts necessary to establish its claim at trial. (Ibid.)
We review the court's order granting Lynch's motion to strike Paulus's complaint as a SLAPP suit with the above standard of review in mind.

IV. The Order Striking Paulus's Complaint

A. Paulus's Malicious Prosecution Claim

Paulus does not dispute that the malicious prosecution action arose from an "act . . . in furtherance of [a] person's right of petition or free speech under the United States or California Constitution in connection with a public issue," within the meaning of the anti-SLAPP statute. (§ 425.16, subd. (b)(1); see also id., subd. (e).) He therefore concedes that Lynch met its initial burden of proof in the motion to strike. The burden thus shifted to Paulus to establish that he had a probability of prevailing on his claim. (Equilon, *159 supra, 29 Cal.4th at p. 67, 124 Cal.Rptr.2d 507, 52 P.3d 685.)
A malicious prosecution claim requires that the plaintiff "demonstrate `that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citations.]" (Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 871-872, 254 Cal.Rptr. 336, 765 P.2d 498 (Sheldon Appel), quoting Bertero v. National General Corp. (1974) 13 Cal.3d 43, 50, 118 Cal.Rptr. 184, 529 P.2d 608.) The parties do not dispute that Lynch's prior suit terminated in Paulus's favor. Accordingly, our focus here is upon the second and third elements.
Paulus contends that the court below erred in finding that he had not met his burden of establishing a prima facie claim of malicious prosecution. He asserts that he presented evidence sufficient to establish that Lynch had prosecuted the prior suit without probable cause and with malice; Paulus having thus met his burden (he argues), the anti-SLAPP motion should have been denied.
Before addressing these arguments, we must first take a brief detour to set forth basic principles concerning malicious prosecution claims and claims brought under the UCL. These principles are essential for us to properly evaluate Paulus's contentions on appeal.

1. Malicious prosecution claims generally

It is a long-recognized fact that claims for malicious prosecution are viewed with disfavor due to their potential to exert an "undue `chilling effect' on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court." (Sheldon Appel, supra, 47 Cal.3d at p. 872, 254 Cal.Rptr. 336, 349, 9 Cal. Rptr.3d 97, 83 P.3d 497 [malicious prosecution claim will not be barred simply because of tort's disfavored status].) It is for this reason, as our Supreme Court has observed, that "the elements of the tort have historically been carefully circumscribed [in California] so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (Sheldon Appel, supra, at p. 872, 254 Cal.Rptr. 336, 765 P.2d 498.) Acknowledging that the flood of litigation in recent years has caused a reassessment of the "`disfavored' status of the malicious prosecution tort" (ibid.), our high court declined the invitation to "abandon or relax the traditional limitations on malicious prosecution recovery." (Id. at p. 874, 254 Cal.Rptr. 336, 765 P.2d 498; see also Wilson v. Parker, Covert & Chidester (2002) 28 Cal.4th 811, 816-817, 123 Cal. Rptr.2d 19, 50 P.3d 733 (Wilson).)
With these policy considerations as background, the court in Sheldon Appel enunciated a definition of the probable cause element of malicious prosecution that the Supreme Court later characterized as a "rather lenient standard for bringing a civil action." (Wilson, supra, 28 Cal.4th at p. 817, 123 Cal.Rptr.2d 19, 50 P.3d 733.) Under this test, probable cause for having brought the prior action will be found where "any reasonable attorney would have thought the claim tenable." (Sheldon Appel, supra, 47 Cal.3d at p. 886, 254 Cal.Rptr. 336, 765 P.2d 498.)[10] The *160 issue of probable cause is always one for the court to decide (id. at pp. 868, 875, 881, 254 Cal.Rptr. 336, 765 P.2d 498), and "resolution of that question of law calls for the application of an objective standard to the facts on which the [malicious prosecution] defendant acted." (Id. at p. 878, 254 Cal. Rptr. 336, 765 P.2d 498.) The court explained that this determination "requires a sensitive evaluation of legal principles and precedents" (id. at p. 875, 254 Cal.Rptr. 336, 765 P.2d 498), and "that in evaluating whether or not there was probable cause for malicious prosecution purposes, a court must properly take into account the evolutionary potential of legal principles. [Citation.]" (Id. at p. 886, 254 Cal.Rptr. 336, 765 P.2d 498.) And as explained by the Supreme Court more recently, under this "rather lenient" probable cause standard, "[a] litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim. Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious. [Citation.]" (Wilson, supra, 28 Cal.4th at p. 822, 123 Cal.Rptr.2d 19, 50 P.3d 733, citing Sheldon Appel, supra, at p. 885, 254 Cal.Rptr. 336, 765 P.2d 498, fn. omitted.)[11]
The element of malice in a malicious prosecution claim  in contrast to the probable cause element decided by the court under an objective standard  is one that "relates to the subjective intent or purpose with which the defendant acted in initiating the prior action, and . . . the defendant's motivation is a question of fact to be determined by the jury. [Citations.]" (Sheldon Appel, supra, 47 Cal.3d at p. 874, 254 Cal.Rptr. 336, 765 P.2d 498.) Factors relevant to malice include the defendant's subjective belief regarding the validity of the claim, and (in the case of malicious prosecution against the attorney) the extent of any research or investigation by the attorney prosecuting the prior suit. (Id. at p. 883, 254 Cal.Rptr. 336, 765 P.2d 498.) Malice may not only consist of ill will or hostility toward the malicious-prosecution plaintiff, but may also result where the prior suit was "instituted primarily for an improper purpose." (Albertson v. Raboff (1956) 46 Cal.2d 375, 383, 295 P.2d 405; see also Downey Venture v. LMI Ins. Co. (1998) 66 Cal.App.4th 478, 499, 78 Cal. Rptr.2d 142 [malice in malicious prosecution *161 claim consists of suit brought "for the intentionally wrongful purpose of injuring another person"].)[12] Typically  since it is rare that there will be a "smoking gun" admission of improper motive  malice is established "by circumstantial evidence and inferences drawn from the evidence." (HMS Capital, Inc. v. Lawyers Title Co., supra, 118 Cal.App.4th 204, 218, 12 Cal. Rptr.3d 786.) Malice cannot be established simply by a showing of the absence of probable cause, although the fact that the prior suit was objectively untenable is a factor that may be considered on the issue of malice. (Ibid.)

2. Unfair competition law claims generally

Business and Professions Code section 17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." As our high court has stated, "[t]he Legislature intended this `sweeping language' to include `"anything that can properly be called a business practice and that at the same time is forbidden by law."' [Citation.]" (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545, quoting Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 111, 113, 101 Cal.Rptr. 745, 496 P.2d 817 (Barquis).) The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]" (Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296, 45 P.3d 243, citing Barquis, supra, at p. 110, 101 Cal.Rptr. 745, 496 P.2d 817.) Thus, the scope of the UCL (Bus. & Prof.Code, § 17200 et seq.) is "broad." (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cel-Tech).)[13] It "covers *162 a wide range of conduct." (Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1143, 131 Cal. Rptr.2d 29, 63 P.3d 937.) But "an action under the UCL `is not an all-purpose substitute for a tort or contract action.' [Citation.]" (Id. at p. 1150, 131 Cal.Rptr.2d 29, 63 P.3d 937.)
A UCL action "`to redress an unlawful business practice "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Business and Professions Code] section 17200 et seq. and subject to the distinct remedies provided thereunder.'" (Farmers Ins. Exchange v. Superior Court (1992) 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730.) The UCL states that "[u]nless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." (Bus. & Prof.Code, § 17205.) Thus, our Supreme Court has held that even though a particular act is proscribed by another statute in which no private right of action is specifically provided, this does not preclude the "borrowing" of a violation of that other statute by a private UCL plaintiff. (Stop Youth Addiction, supra, 17 Cal.4th 553, 565-567, 71 Cal.Rptr.2d 731, 950 P.2d 1086; see also Kasky v. Nike, Inc., supra, 27 Cal.4th at p. 950, 119 Cal.Rptr.2d 296, 45 P.3d 243.) For example, the fact that Penal Code section 308 criminalized the knowing sale of tobacco to minors was held not to have "impliedly preempted" the bringing of a private UCL suit against various retailers to enjoin that activity. (Stop Youth Addiction, supra, at p. 572, 71 Cal. Rptr.2d 731, 950 P.2d 1086; but see Rubin v. Green (1993) 4 Cal.4th 1187, 1204, 17 Cal.Rptr.2d 828, 847 P.2d 1044 [litigation privilege constituted absolute bar to UCL suit]; Safeco Ins. Co. v. Superior Court (1990) 216 Cal.App.3d 1491, 1493-1494, 265 Cal.Rptr. 585 [UCL could not be used to circumvent prohibition against direct action against insurer under decision in Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58].)
At the time of Lynch's initiation and prosecution of the prior suit, there was broad standing to sue under the UCL; a UCL action could be brought not only by public enforcement officials (i.e., the Attorney General or county district attorney), but also "by any person acting for the interest of itself, its members or the general public." (Former Bus. & Prof.Code, § 17204; see Stats.1993, ch. 926, § 2, amended by Initiative Measure (Prop. 64, § 3, approved Nov. 2, 2004).)[14] The UCL *163 defines "person" to "mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." (Bus. & Prof.Code, § 17201.) Our courts "have consistently upheld the right of both individual persons and organizations under the [UCL] to sue on behalf of the public for injunctive relief as `private attorney[s] general,' even if they have not themselves been personally harmed or aggrieved. [Citations.]" (Consumers Union of United States, Inc. v. Fisher Development, Inc. (1989) 208 Cal.App.3d 1433, 1439, 257 Cal. Rptr. 151; see also AICCO, Inc. v. Insurance Co. of North America (2001) 90 Cal. App.4th 579, 592, 109 Cal.Rptr.2d 359 ["broad language" of Bus. & Prof.Code, § 17204 permits suit by nonaggrieved parties on behalf of others].)[15]
Under the broad scope of the UCL, "[t]he statutory language referring to `any unlawful, unfair or fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. `Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition  acts or practices [that] are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as `unfair' or `deceptive' even if not `unlawful' and vice versa."' [Citations.]" (Cel-Tech, supra, 20 Cal.4th at p. 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.) "`[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable "`new schemes which the fertility of man's invention would contrive.'" (American Philatelic Soc. v. Claibourne (1935) 3 Cal.2d 689, 698[, 46 P.2d 135].)'" (Id. at p. 181, 83 Cal.Rptr.2d 548, 973 P.2d 527.) And a UCL plaintiff ordinarily need not show defendant's intent to injure or harm: "The UCL imposes strict liability when property or monetary losses are occasioned by conduct that constitutes an unfair business practice. [Citation.]" (Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 181, 96 Cal.Rptr.2d 518, 999 P.2d 706.)
The Supreme Court has explained that a UCL action is not barred simply because there is no particular law that specifically prohibits the conduct complained of. (Cel-Tech, supra, 20 Cal.4th at *164 pp. 182-183, 83 Cal.Rptr.2d 548, 973 P.2d 527.) Rather, a UCL action is barred only if another law specifically bars the subject UCL action or specifically permits the conduct complained of. (Id. at p. 183, 83 Cal.Rptr.2d 548, 973 P.2d 527; see also id. at p. 184, 83 Cal.Rptr.2d 548, 973 P.2d 527: "[C]ourts may not use the unfair competition law to condemn actions the Legislature permits. Conversely, the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair. Plaintiffs may not `plead around' a `safe harbor,' but the safety must be more than the absence of danger.") (Fn. omitted.)
Where the UCL plaintiff alleges that the defendant (who is a competitor) has committed an "unfair" act or practice, the test of whether the UCL's "unfair" prong has been satisfied is whether the "conduct . . . threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (Cel-Tech, supra, 20 Cal.4th at p. 187, 83 Cal.Rptr.2d 548, 973 P.2d 527, fn. omitted.)[16]
But where the act or practice under the UCL arises out of a consumer matter, the definition of "unfair" is less clear, as the Cel-Tech test was limited to UCL actions alleging unfair acts or practices against a competitor of the plaintiff. (Cel-Tech, supra, 20 Cal.4th at p. 187, fn. 12, 83 Cal. Rptr.2d 548, 973 P.2d 527.) Some cases have applied the Cel-Tech test to UCL consumer cases as well. For instance, in Schnall v. Hertz Corp. (2000) 78 Cal. App.4th 1144, 1166, 93 Cal.Rptr.2d 439, the appellate court  in a UCL class action by a car renter against a rental car company  after noting that the case differed from Cel-Tech because it was not an action between competitors, applied the Cel-Tech test "that any claims of unfairness under the UCL should be defined in connection with a legislatively declared policy," and concluded that the test was satisfied in that instance. (See also Gregory v. Albertson's, Inc. (2002) 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389.) Other courts have noted that the court in Cel-Tech, while critical of existing standards for determining unfairness in consumer cases under the UCL, declined to provide a definitive test. (See Walker v. Countrywide Home Loans, Inc. (2002) 98 Cal.App.4th 1158, 1170, 121 Cal.Rptr.2d 79.) As the Walker court put it: "No clear test to determine what constitutes an unfair business practice has been established in California. One court has said that an unfair business practice is one that `offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' (People v. Casa Blanca Convalescent *165 Homes, Inc. (1984) 159 Cal.App.3d 509, 530[, 206 Cal.Rptr. 164]), and another court has stated that to determine whether a business practice is unfair, courts must `"weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. . . ."' (State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1104[, 53 Cal.Rptr.2d 229].)" (Ibid.; see also Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal.App.4th 700, 718-719, 113 Cal. Rptr.2d 399.)

3. Merits of Paulus's malicious prosecution claim

We now apply the above principles to evaluate Paulus's contention that he made a prima facie showing below to support his claim of malicious prosecution against Lynch. We focus first on the element of probable cause.
Lynch alleged a UCL claim both on its own behalf as Paulus's competitor and as a private attorney general. The essence of its claim was that the proposed Dealership was based upon unlawful land-use approvals by the City and, further, that Paulus would receive, in effect, an illegal public subsidy of over 1.2 million dollars to establish and operate the Dealership. Through this public subsidy (Lynch alleged), Paulus would gain an unfair competitive advantage in the marketplace to the detriment of Lynch. The proposed Dealership allegedly threatened both Lynch and competition in general.
As we discuss below, irrespective of whether Lynch's UCL claim is evaluated under the "unlawful" or "unfair" prong, it was objectively tenable. Because the prior suit was not one that "`all reasonable lawyers [would] agree totally lack[ed] merit'" (Jarrow Formulas, supra, 31 Cal.4th 728, 743, fn. 13, 3 Cal.Rptr.3d 636, 74 P.3d 737), the element of absence of probable cause essential to Paulus's malicious prosecution claim was missing.
First, Lynch's claim, on its face, appeared to have been consistent with the UCL's broad purpose of "protect[ing] both consumers and competitors by promoting fair competition in commercial markets for goods and services." (Kasky v. Nike, Inc., supra, 27 Cal.4th at p. 949, 119 Cal. Rptr.2d 296, 45 P.3d 243.) At least superficially, the prior suit alleged that the proposed Dealership threatened competition because the allegedly illegal public subsidy to Paulus would promote an unlevel playing field. Lynch averred that the public would be harmed by development of the Dealership because it would have the effect of eliminating Lynch as a competitor; as a result of the allegedly illegal public subsidy, Paulus would be able to significantly undercut Lynch's prices.
Second, "[v]irtually any law or regulation  federal or state, statutory or common law  can serve as [a] predicate for a [Business and Professions Code section] 17200 `unlawful' violation." (Stern, Bus. & Prof.Code. § 17200 Practice (The Rutter Group 2006) ¶ 3:56, p. 3-13.) Thus, examples of UCL claims properly alleging "unlawful" conduct, while not boundless, are seemingly so. As may be relevant here, for instance, violations of environmental statutes may serve as predicates for a UCL claim based on "unlawful" business acts or practices. (See, e.g., Southwest Marine, Inc. v. Triple A Mach. Shop, Inc. (N.D.Cal.1989) 720 F.Supp. 805, 807-808 (Southwest Marine) [violation of Hazardous Waste Control Act, Health & Saf. Code, § 25189.5]; Hewlett v. Squaw Valley Ski Corp. (1997) 54 Cal.App.4th 499, 520-525, 63 Cal.Rptr.2d 118 (Hewlett) [violations of Z'berg-Nejedly Forest Practice Act, Pub. Res.Code, § 4511 et seq.]; People v. K. Sakai Co. (1976) 56 Cal.App.3d 531, 128 Cal.Rptr. 536 [violation of Endangered *166 Species Act, Pen.Code, §§ 653o-653r].)[17] Likewise, a UCL "unlawful" claim may be founded on the allegation of a secret rebate or unearned price discount. (Saunders v. Superior Court (1994) 27 Cal. App.4th 832, 840-841, 33 Cal.Rptr.2d 438.) Moreover, violations of local ordinances may be "borrowed" to establish a UCL claim based upon "unlawful" acts or practices. (City and County of San Francisco v. Sainez (2000) 77 Cal.App.4th 1302, 92 Cal.Rptr.2d 418 [building and housing code violations]; Hewlett, supra, at p. 532, 63 Cal.Rptr.2d 118 [violation of zoning ordinance, specifically, a conditional use permit]; Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy (1992) 4 Cal. App.4th 963, 6 Cal.Rptr.2d 193 [violation of county ordinance regulating sale of unpasteurized milk products].)
Lynch's UCL claim was based upon "unlawful" conduct with respect to an allegedly illegal public subsidy, and land-use approvals that purportedly constituted violations of CEQA, of section 1094.5, the Zoning Variance Statute (Gov.Code, § 65906 et seq.), and local City ordinances.[18] Under these circumstances, we are loath to conclude that Lynch's claim under the UCL's "unlawful" prong was not objectively tenable. (Cf. Hewlett, supra, 54 Cal.App.4th at p. 532, 63 Cal. Rptr.2d 118 [violation of conditional use permit]; Saunders v. Superior Court, supra, 27 Cal.App.4th at pp. 840-841, 33 Cal.Rptr.2d 438 [allegations that court reporters charged disparate rates for services and that parties charged higher rates were not informed of disparity sufficient to support UCL claim under either the "unlawful" or "unfair" prong].)[19]
Third, "[t]he `unfair' prong of the UCL [citation] intentionally provides courts with broad discretion to prohibit new schemes to defraud [citation]." (Rushing et al., Matthew Bender Practice Guide: California Unfair Competition and Business Torts (2006) Unfair Competition, § 2.11[1], p. 2-32; see also Motors, Inc. v. Times Mirror Co. (1980) 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543.)[20] Thus, the *167 fact that the challenged practice or act was not previously condemned by statute or case authority presents no impediment to a finding that it is "unfair" under the UCL. (See, e.g., Allied Grape Growers v. Bronco Wine Co. (1988) 203 Cal.App.3d 432, 450-451, 249 Cal.Rptr. 872; People v. James (1981) 122 Cal.App.3d 25, 35-36, 177 Cal.Rptr. 110 (James).)
In James, the defendants  a liquor store owner and the proprietor of a towing company  allegedly engaged in unfair practices, namely, towing vehicles parked at the liquor store without adequately warning patrons of the possibility that their vehicles would be towed, and charging excessive towing and related fees. (James, supra, 122 Cal.App.3d at pp. 29-31, 177 Cal.Rptr. 110.) The appellate court specifically rejected the store owner's contention that he could not be held liable for unfair business practices under the UCL because no court had previously denounced the specific practices at issue: "When we apply the principles enunciated in Barquis[, supra, 7 Cal.3d 94, 101 Cal. Rptr. 745, 496 P.2d 817] to the instant case, the business practices which defendants were shown to be engaged in were manifestly `unlawful, unfair, and fraudulent.' Vehicles were hoisted or towed away without sufficient warning; drivers were subjected to payment of fees to have their cars `let-down' in the parking lot; they were coerced into paying either by physical intimidation or misrepresentation concerning the existence of liens or other rights of the tower; they were charged unconscionable fees to retrieve their vehicles from hoisting and impoundment; and they were forced to waive claims for damage to their property in order to get it back. There was also evidence that [defendant store owner] participated in these practices by authorizing the impounds and taking kickbacks on fees. The fact that defendants' scheme had never been dealt with by the appellate court does not render it any less fundamentally dishonest, unfair, or unlawful. [Citation.]" (Id. at pp. 35-36, 177 Cal.Rptr. 110.)
Here, Paulus's contention that Lynch lacked probable cause to bring the underlying UCL suit implies the argument specifically rejected in Allied Grape Growers v. Bronco Wine Co., supra, 203 Cal.App.3d 432, 249 Cal.Rptr. 872, and James, supra, 122 Cal.App.3d 25, 177 Cal.Rptr. 110: That, because the alleged conduct of acting on illegally approved land-use applications and accepting improper public subsidies had never been declared "unfair" under the UCL by any court, it was therefore a legally untenable claim under the UCL. We reject that implicit contention. Further, while we cannot say definitively that the alleged conduct challenged in the prior suit was "unfair" under the UCL, we cannot conclude that no reasonable attorney  utilizing any of the various tests for "unfairness" (see pt. IV, sec. A 2, ante)  would reach that conclusion.
Fourth, no cases have held that matters of the nature alleged by Lynch in the prior suit cannot as a matter of law serve as a basis for a UCL claim. We find this fact to be also relevant on the question of whether the prior suit was objectively tenable. Paulus argues that, to the contrary, Saad v. City of Berkeley (1994) 24 Cal. App.4th 1206, 30 Cal.Rptr.2d 95 (Saad), is direct authority that Lynch's UCL claim was not maintainable. That case did hold that administrative mandamus "under . . . *168 section 1094.5 is the exclusive remedy for judicial review of the quasi-adjudicatory administrative action of local level agencies," such as action on a land-use permit or variance. (Id. at p. 1211, 30 Cal.Rptr.2d 95.) But Saad concerned a direct challenge by the permittee to municipal action. It did not involve a claim by a third party alleging that it was adversely affected by a municipality granting allegedly illegal land-use applications. And the plaintiff in Saad did not allege that any actions taken constituted a violation of the UCL. Accordingly, we disagree with Paulus that Saad precluded an action under the UCL of the kind filed by Lynch.[21]
In evaluating the probable cause element in a malicious prosecution claim, we are mindful that we must render "a sensitive evaluation of legal principles and precedents" (Sheldon Appel, supra, 47 Cal.3d at p. 875, 254 Cal.Rptr. 336, 765 P.2d 498), and we "must properly take into account the evolutionary potential of legal principles." (Id. at p. 886, 254 Cal.Rptr. 336, 765 P.2d 498.) Because of (1) the disfavored status of malicious prosecution claims, (2) the "rather lenient standard" of probable cause (Wilson, supra, 28 Cal.4th at p. 817, 123 Cal.Rptr.2d 19, 50 P.3d 733), (3) the broad scope of the UCL, and (4) the UCL's intended purpose of addressing, among other things, unfair conduct that "may run the gamut of human ingenuity and chicanery" (People ex rel. Mosk v. National Research Co. of Cal., supra, 201 Cal.App.2d at p. 772, 20 Cal.Rptr. 516), we conclude that Paulus failed to make a prima facie showing that Lynch's UCL claim (under either the "unlawful" or "unfair" prongs) lacked probable cause.[22]
In light of our conclusion that Paulus did not make a prima facie showing that the prior suit lacked probable cause, we hold that the trial court properly granted Lynch's special motion to strike the malicious prosecution claim under section 425.16.[23]

B. Abuse of Process and Intentional Interference With Contract Claims

Paulus offered no opposition below to Lynch's anti-SLAPP motion to strike the claims for abuse of process and for intentional interference with contractual relations. The court therefore granted *169 the motion to strike as to those causes of action, noting that Paulus made "no independent factual or legal arguments regarding the strength of these claims." Similarly, Paulus did not argue in his opening brief that the court erred in striking the abuse of process and interference with contract claims. The opening brief says nothing about these claims beyond the conclusory statement in its penultimate sentence: "Paulus has met his burden to show a prima [facie] case for malicious prosecution, abuse of process and intentional interference with contract."
We deem Paulus to have abandoned any challenge to the order striking these two claims because of his failure to address the matter in his opening brief. Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge. (Tisher v. California Horse Racing Bd. (1991) 231 Cal.App.3d 349, 361, 282 Cal. Rptr. 330.) Paulus's conclusory statement at the end of his opening brief does not preserve the issue for appeal. (See Osornio v. Weingarten (2004) 124 Cal.App.4th 304, 316, 21 Cal.Rptr.3d 246, fn. 7: "`Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived.'") And Paulus's belated attempt to address the abuse of process and interference with contract claims in his reply brief  after the respondents' brief noted his failure to address the striking of these claims  did not salvage these abandoned issues. (Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. (2000) 78 Cal.App.4th 847, 894-895, fn. 10, 93 Cal.Rptr.2d 364 [arguments raised by appellant for first time in reply brief generally not considered, absent good reason for failing to present them earlier]; Reichardt v. Hoffman (1997) 52 Cal. App.4th 754, 764, 60 Cal.Rptr.2d 770 [issue raised for first time in reply brief generally not considered, "`because such consideration would deprive the respondent of an opportunity to counter the argument'"].)[24]

V. Order Awarding Attorney Fees and Costs

The anti-SLAPP statute requires an award of attorney fees to a prevailing defendant: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c); see also Ketchum v. Moses (2001) 24 Cal.4th 1122, 1131, 104 Cal.Rptr.2d 377, 17 P.3d 735 *170 [attorney fees award to prevailing defendant on granting of anti-SLAPP motion is mandatory].) An appellate court reviews the amount of mandatory attorney fees awarded by the trial court to a defendant who successfully brings an anti-SLAPP motion for abuse of discretion. (Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1426, 103 Cal.Rptr.2d 174.)
Here, Paulus filed a notice of appeal from both the order granting the motion to strike complaint under section 425.16 and the order granting attorney fees and costs to Lynch.[25] But he makes no argument in his opening brief that the court erred in its award of attorney fees and costs. The statement in the brief's introduction  that "[t]he order granting the anti-SLAPP motion and award of attorneys' fees should be rever[s]ed"  does not constitute a sufficient argument to preserve the issue for appeal. (See Schoendorf v. U.D. Registry, Inc. (2002) 97 Cal. App.4th 227, 237, 118 Cal.Rptr.2d 313 [conclusory statement by the plaintiff in appellate brief that the defendant did not make requisite showing in anti-SLAPP motion insufficient to preserve issue].)
Because Paulus did not adequately preserve the issue for appeal, we affirm the award of attorney fees and costs in its entirety. (See Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist. (2003) 106 Cal.App.4th 1219, 1248, 132 Cal.Rptr.2d 57: "The assertion [that there was "irregularity" in billing by the defendants' attorneys] is unaccompanied by any citation to the record or any explanation of which fees were unreasonable or duplicative. With this cursory argument, [the plaintiff] has given us no basis to disturb the trial court's discretionary ruling on the attorney fees motion.")[26] Moreover, as Lynch has prevailed in this appeal, it is also entitled to an award of costs and attorney fees incurred in this proceeding. (Dove Audio, Inc. v. Rosenfeld, Meyer & Susman (1996) 47 Cal. App.4th 777, 785, 54 Cal.Rptr.2d 830.)

DISPOSITION
The order granting Lynch's special motion to strike is affirmed. The order awarding attorney fees and costs to Lynch is likewise affirmed. Lynch shall recover its attorney fees and costs on appeal pursuant to section 425.16, subdivision (c), the amounts of which shall be determined by the trial court. (See Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc. (2005) 129 Cal.App.4th 1228, 1267, 29 Cal.Rptr.3d 521.)
RUSHING, P.J., and PREMO, J., concur.
NOTES
[1] Although the statute does not bear a legislative title, the Supreme Court has referred to Business and Professions Code section 17200 et seq. most recently as the unfair competition law or UCL. (See Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 558, 71 Cal.Rptr.2d 731, 950 P.2d 1086 & fn. 2 (Stop Youth Addiction).)
[2] Bob Lynch Ford, Inc. and Scott Lynch are separate parties. We refer to them throughout this opinion (as a matter of convenience) collectively as Lynch, and we will use the gender-neutral and singular "it" in referring to those parties.
[3] All further statutory references are to the Code of Civil Procedure unless otherwise stated.
[4] The court rejected the demurring defendants' third argument because it found that Lynch's UCL claim against Paulus was "predicated upon his having allegedly committed `unlawful' business practices," while Paulus argued only that the first amended complaint failed to allege facts in support of the claim that Paulus committed "unfair" business practices under the UCL. The court thus found that Paulus had "failed [in his demurrer] to establish that [Lynch's] claim against him fails as a matter of law."
[5] The second amended complaint alleged as a new count that the proposed Paulus/City development agreement was "a significant threat to competition between Lynch and Paulus." The pleading also differed in that it deleted two of the counts alleged in the first amended complaint. The second amended complaint also contained a caption that differed from the first amended complaint (including a different title and the addition of numerous new parties [apparently all City officials]). Otherwise, the second amended complaint was substantially similar to the first amended complaint.
[6] Before the demurrer to the second amended complaint was considered, Lynch sought a temporary restraining order to prevent establishment of the Dealership based upon the previously approved land use applications. That application was denied by the court on or about November 21, 2003.
[7] Lynch filed a request for judicial notice in connection with its anti-SLAPP motion. The motion requested that the court take judicial notice of numerous pleadings (three volumes) filed in the prior suit. The court below granted the request for judicial notice.
[8] Lynch later amended its request, asking that the court award it $62,556 in attorney fees and $1,819.96 in costs.
[9] Paulus raises for the first time in his reply brief the contentions that the motion to strike should have been denied to his claims for abuse of process and interference with contractual relations. As we will discuss (see pt. IV, sec. B, post), Paulus forfeited these claims of error but, in any event, they are without merit.
[10] The Supreme Court explained that this standard was adapted from the related issue of determining whether an appeal is frivolous. (Sheldon Appel, supra, 47 Cal.3d at pp. 885-886, 254 Cal.Rptr. 336, 765 P.2d 498.) Under that test, an appeal is deemed to be frivolous only where "any reasonable attorney would agree that the appeal is totally and completely without merit." (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650, 183 Cal. Rptr. 508, 646 P.2d 179.)
[11] In the same vein, the Supreme Court has recently stated: "`Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must separately show lack of probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which all reasonable lawyers agree totally lack merit  that is, those which lack probable cause  are the least meritorious of all meritless suits. Only this subgroup of meritless suits present[s] no probable cause.' [Citations.]" (Jarrow Formulas, supra, 31 Cal.4th 728, 743, fn. 13, 3 Cal.Rptr.3d 636, 74 P.3d 737, quoting Roberts v. Sentry Life Insurance (1999) 76 Cal.App.4th 375, 382, 90 Cal. Rptr.2d 408.)
[12] In Albertson, the court noted that four instances demonstrating malice in a civil malicious prosecution case were where the prior suit was commenced (1) by a party who did not believe the claim to be valid; (2) chiefly as a result of hostility or ill will; (3) solely to deprive the party being sued of the beneficial use of that party's property; or (4) for the purpose of extracting a settlement bearing no relationship to the claim. (Albertson v. Raboff, supra, 46 Cal.2d at p. 383, 295 P.2d 405.)
[13] California's electorate narrowed the scope of the UCL in 2004 by passing Proposition 64. Its intent was, inter alia, "to eliminate frivolous [UCL] lawsuits while protecting the right of individuals to retain an attorney and file an action for relief pursuant to Chapter 5" (Ballot Pamp., Gen. Elec. (Nov. 2, 2004) text of Prop. 64, § 1(d), p. 109); "to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution" (id., § 1(e)); and to provide "that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public." (id., § 1(f).) Proposition 64's provisions included  by amendment to Business and Professions Code section 17204  the elimination of the right of a person "acting for the interests of itself, its members or the general public" to bring a UCL suit, changing the language of the statute to read that a person could bring suit only if the person "has suffered injury in fact and has lost money or property as a result of such unfair competition." (Ballot Pamp., Gen. Elec. (Nov. 2, 2004) text of Prop. 64, § 3, p. 109.) The proposition took effect on "the day after the election unless the measure provides otherwise." (Cal. Const. art. II, § 10, subd. (a).) Since Proposition 64 contained no specific provision for its effectiveness, it took effect on November 3, 2004. There is a present controversy  which is pending resolution by our Supreme Court  as to whether Proposition 64 has retroactive application to any case pending as of November 3, 2004. (Cf. Californians for Disability Rights v. Mervyn's, LLC, review granted Apr. 27, 2005, S131798, 28 Cal.Rptr.3d 1, 110 P.3d 1216 [First District Court of Appeal, Division Four, holding proposition not retroactive], with Branick v. Downey Savings & Loan Assn., review granted April 27, 2005, S132433, 28 Cal.Rptr.3d 2, 110 P.3d 1217 [Second District Court of Appeal, Division Five, holding proposition retroactive]). But since Lynch's UCL action was concluded in June 2004 with the Supreme Court's denial of Lynch's petition for review, the prior suit was therefore governed by Business and Professions Code section 17200 as it existed before the passage of Proposition 64.
[14] Prior to November 2004, the statute read as follows: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public." (Stats.1993, ch. 926, § 2, pp. 5198-5199.) As we have noted (see fn. 13, ante), one of the chief results of the passage of Proposition 64 was the elimination of standing by a private UCL plaintiff except where that person has suffered direct injury as a result of the act of unfair competition complained of.
[15] But see Stop Youth Addiction, supra, 17 Cal.4th at pp. 584-598, 71 Cal.Rptr.2d 731, 950 P.2d 1086, dissenting opinion of Brown, J.: "[A] judicial construction of [Business and Professions Code] section 17204 that confers universal citizen standing to enforce the UCL threatens the constitutional separation of powers." (Id. at p. 593, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (dis. opn. of Brown, J.).) "[A] citizen suit under the UCL based upon [the `borrowed' criminal statute] is not a private, civil analogue to a criminal prosecution. Instead, it is a kind of private usurpation of a criminal enforcement power conferred exclusively on a class of executive officers." (Id. at p. 594, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (dis. opn. of Brown, J.).)
[16] Justice Kennard decried the Cel-Tech court's test for determining whether the conduct of a direct competitor to a plaintiff is "unfair" under the UCL as being vague and one that would "magnify the uncertainty that businesses face in trying to comply with the unfair competition law." (Cel-Tech, supra, 20 Cal.4th at p. 192, 83 Cal.Rptr.2d 548, 973 P.2d 527 (conc. & dis. opn. of Kennard, J.).) "I can imagine no greater recipe for confusion and uncertainty than the majority's penumbral antitrust threat standard. It is difficult enough for courts and businesses alike to determine whether a business practice amounts to an actual violation of the antitrust laws prohibiting restraint of trade or exclusionary monopolistic conduct. A business seeking to guide its competitive conduct by the majority's standard will be put to the impossible task of deciding whether its conduct, even though not a violation of the antitrust laws, violates the `spirit' of the antitrust laws or is an `incipient' violation of those laws or is a threat to competition." (Id. at p. 200, 83 Cal.Rptr.2d 548, 973 P.2d 527 (conc. & dis. opn. of Kennard, J.).)
[17] The Southwest Marine case involved a rather novel theory. There, the plaintiff  the defendant's competitor and an unsuccessful bidder on a Navy contract  alleged that the defendant had been awarded the Navy contract because he was able to submit a low bid solely because of his illegal (but economical) disposal of hazardous wastes. (Southwest Marine, supra, 720 F.Supp. at p. 808.) The court concluded that the plaintiff thereby stated a claim for relief under the UCL because it "fit[] within [the] historical conception of the law." (Ibid.)
[18] Paulus makes much of the fact that Lynch brought the UCL action against the City and related City entities, which parties were clearly immune from suit. (See, e.g., People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd. (2005) 125 Cal.App.4th 871, 22 Cal.Rptr.3d 900; Community Memorial Hosp. v. County of Ventura (1996) 50 Cal.App.4th 199, 209-211, 56 Cal. Rptr.2d 732; Santa Monica Rent Control Bd. v. Bluvshtein (1991) 230 Cal.App.3d 308, 318, 281 Cal.Rptr. 298.) The fact that Lynch joined parties that were immune from suit has no bearing on whether the prior suit was objectively tenable as to Paulus (a private individual).
[19] We do not suggest that either Hewlett, supra, 54 Cal.App.4th 499, 63 Cal.Rptr.2d 118, or Saunders v. Superior Court, supra, 27 Cal.App.4th 832, 33 Cal.Rptr.2d 438, may be considered to be definitive authority for the proposition that the allegations in Lynch's suit against Paulus established a claim under the UCL. Those cases are factually dissimilar from the case before us. Nonetheless, they may be relied upon as furnishing some basis for finding Lynch's claim to have been objectively tenable.
[20] In an oft-quoted passage (see, e.g., Ford Dealers Assn. v. Department of Motor Vehicles (1982) 32 Cal.3d 347, 368-369, 185 Cal.Rptr. 453, 650 P.2d 328), an appellate court over four decades ago explained the breadth of the "unfair" prong of the UCL as follows: "[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited [citations], since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery." (People ex rel. Mosk v. National Research Co. of Cal. (1962) 201 Cal.App.2d 765, 772, 20 Cal.Rptr. 516.)
[21] Paulus also cites State of California v. Superior Court (1974) 12 Cal.3d 237, 115 Cal. Rptr. 497, 524 P.2d 1281, and City of Santee v. Superior Court (1991) 228 Cal.App.3d 713, 279 Cal.Rptr. 22, in support of the assertion that Lynch's prior suit was not objectively tenable. But like Saad, supra, 24 Cal.App.4th 1206, 30 Cal.Rptr.2d 95, these cases merely held that administrative mandamus, not declaratory relief, is the appropriate remedy for a party aggrieved by an administrative decision. Neither case involved a UCL claim asserted by a third party. Accordingly, these cases did not preclude the filing of the prior suit.
[22] Our conclusion rejecting Paulus's contention that Lynch lacked probable cause to bring the prior UCL suit does not imply a view that the acts and practices alleged in the prior suit, if proved, constituted unfair competition under the UCL. Under the "rather lenient standard" of probable cause, we simply conclude here that Lynch's prior suit met the threshold of a successful defense against a malicious prosecution claim, i.e., that it was not a suit that "`all reasonable lawyers agree' totally lack[ed] merit." (Jarrow Formulas, supra, 31 Cal.4th at p. 743, fn. 13, 3 Cal.Rptr.3d 636, 74 P.3d 737.)
[23] Because we find that Paulus did not meet his burden of establishing that he would probably prevail on the merits (in that the element of the absence of probable cause is found wanting), we need not examine whether Paulus presented sufficient evidence of malice to support his malicious prosecution claim. (See Hiser v. Bell Helicopter Textron Inc. (2003) 111 Cal.App.4th 640, 655, 4 Cal. Rptr.3d 249.)
[24] In so holding, we do not mean to imply that Paulus's contentions  were we not to find them forfeited  have any merit. In opposing the anti-SLAPP motion, Paulus was required both to plead a legally sufficient cause of action and to make a prima facie showing of facts by admissible evidence sufficient to sustain a favorable judgment. (1-800 Contacts, Inc. v. Steinberg (2003) 107 Cal. App.4th 568, 584, 132 Cal.Rptr.2d 789.) As to the abuse of process and interference with contract claims, he did neither. (See Vogel v. Felice (2005) 127 Cal.App.4th 1006, 26 Cal. Rptr.3d 350 [finding that the plaintiff opposing anti-SLAPP motion neither pleaded nor established by admissible evidence valid defamation claim].) The abuse of process claim clearly appears to have been barred. (See Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157, 1168-1169, 232 Cal.Rptr. 567, 728 P.2d 1202 [abuse of process does not lie for filing and maintenance of prior lawsuit, even if done for an improper purpose].) Likewise, the interference with contract claim appears barred by the litigation privilege of Civil Code section 47, subdivision (b). (Rubin v. Green, supra, 4 Cal.4th 1187, 1202-1203, 17 Cal. Rptr.2d 828, 847 P.2d 1044 [litigation privilege rendered the defendants' conduct "absolutely immune from civil tort liability, including plaintiff's interference with contract and related claims"]; see also Rusheen v. Cohen (2006) 37 Cal.4th 1048, 39 Cal.Rptr.3d 516, 128 P.3d 713.)
[25] Paulus's record designation did not include the reporter's transcript from the hearing on that motion for attorney fees. Accordingly, the record on appeal does not include this transcript. (See Maria P. v. Riles (1987) 43 Cal.3d 1281, 1295-1296, 240 Cal.Rptr. 872, 743 P.2d 932 [burden on party challenging attorney fee award to provide adequate record on appeal in order to assess claim of error].)
[26] Paulus argues in his reply brief  based on the assumption that the order granting the anti-SLAPP motion must be reversed as to the malicious prosecution claim  that the attorney fee award should be reversed and the matter remanded to the trial court to assess the amount of fees incurred by Lynch solely in connection with moving to strike the abuse of process and interference with contract claims. Because we have concluded that the order granting the anti-SLAPP motion should be affirmed as to all three causes of action of Paulus's complaint, we obviously reject this untimely contention.