Filed 8/14/14  Gonzales v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JAMES GONZALES et al., | |
| Plaintiffs and Appellants, | E056253 |
| v. | (Super.Ct.No. RIC1115253) |
| COUNTY OF RIVERSIDE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.  Affirmed.

Robinson Legal and Raymond G. Robinson for Plaintiffs and Appellants.

Arias & Lockwood and Christopher D. Lockwood for Defendants and Respondents.

Plaintiffs and appellants James Gonzales, Estella Gonzales, and Gary Gonzales (collectively, plaintiffs) appeal from an order granting the special motion to strike brought by defendants and respondents County of Riverside and Patti Smith

1

(collectively, defendants) pursuant to Code of Civil Procedure section 425.16,[1] commonly known as the "Anti-SLAPP" law.  In addition, Plaintiffs seek reversal of a consequent award of attorney's fees.  Plaintiffs' alleged Defendants' nuisance abatement action against several of Plaintiffs' properties was motivated by racial animus.  The trial court disagreed and dismissed the action.  Because Plaintiffs' suit arose from Defendants' protected activity and had no reasonable probability of succeeding, we find dismissal proper and affirm the award of attorney's fees.

## FACTUAL AND PROCEDURAL HISTORY

James Gonzales (James) is married to Estella Gonzales; Gary Gonzales is James's brother.[2]  Plaintiffs own 15 properties in Riverside County and James has an interest in one other.

A.      BACKGROUND CASES

     1.      *CASE NO. RIC518358:  THE NUISANCE ABATEMENT ACTION*

The County of Riverside (the County) filed a nuisance abatement action on January 30, 2009, against Plaintiffs and several other entities holding deeds of trust on Plaintiffs' properties (the Nuisance Abatement Action).  That action is still ongoing, although the court has appointed a receiver over some of the properties and ordered

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] We use James's first name for clarity and ease of reference as Plaintiffs share the same last name; no disrespect is intended.

plaintiffs to terminate the occupancy of nonpermitted structures. Patti Smith (Smith) was the County's deputy county counsel who filed the Nuisance Abatement Action.

Plaintiffs filed a cross-complaint to the Nuisance Abatement Action on February 18, 2010; four amended cross-complaints followed due to a series of demurrers being sustained with leave to amend.[3] Defendants moved unsuccessfully to dismiss the third amended cross-complaint under the Anti-SLAPP law. The fifth amended cross-complaint, the only version included in full in Appellant's Appendix, was filed on September 29, 2011; it included a cause of action alleging Defendants' conduct was motivated by racial animus and asserted a violation of the equal protection clause of the Bill of Rights. Monetary damages were sought in relief. After another demurrer, this time without leave to amend, the causes of action remaining in the fifth amended cross-complaint were for defamation, interference with contract, and declaratory relief.

2. *CASE NO. RIC10004315: PETITION FOR WRIT OF MANDATE*

On March 11, 2010, Plaintiffs filed a petition for writ of mandate seeking an order the County "cease litigation against [Plaintiffs] and declaring [Plaintiffs'] compliance with building and zoning laws and regulations, a declaratory judgment ordering the same, and a [temporary restraining order] and preliminary and permanent

---

[3] The record is notably deficient in relevant documents from the Nuisance Abatement Action, including rulings on demurrers. In addition, the sequence of filings is impossible to determine from the record and is not established by the parties' briefing; consequently, we take judicial notice of the register of actions from the Riverside County Superior Court case No. RIC518358. We also take judicial notice of the registers of actions for cases Nos. RIC10016537 and RIC10004315, *post*. (Evid. Code, § 452, subd. (d).)

3

injunction to enjoin the County from litigating against [Plaintiffs]."[4] On May 6, 2010, Plaintiffs filed an amended petition. The petition asserted Defendants' actions in the Nuisance Abatement Action were motivated by "racial/ethnic hatred, discrimination, and bias." No monetary relief, other than costs of suit, was sought. The petition was consolidated with the Nuisance Abatement Action on March 18, 2011.

### 3. *CASE NO. RIC10016537: COMPLAINT FOR ABUSE OF PROCESS*

On August 18, 2010, Plaintiffs and Donald Almanzar, who rented a property from Plaintiffs, filed a tort action against Defendants, the Riverside County Sheriff's Department and Tuie Morgan (a County employee) for abuse of process; improper government purpose; failure to discharge mandatory duty under Government Code section 815.6; negligence; assault and battery; conspiracy; intentional or reckless infliction of mental distress; and negligent infliction of mental distress. The suit alleged Defendants' actions in connection with the Nuisance Abatement Action were motivated by "racial discrimination and hatred."[5] Defendants' filed an Anti-SLAPP motion in response to the tort action on October 7, 2010. No copy of the motion is included in the record. Plaintiffs filed a request for dismissal of the entire action without prejudice on

---

[4] The record does not contain the initial petition.

[5] Plaintiffs assert the complaint was not served, but that a "courtesy copy" was provided to Defendants' counsel.

4

November 3, 2010.[6]  Attorneys fees were awarded to Defendants on January 18, 2011, in the amount of $1,475.  Plaintiffs filed an appeal in this court for relief from the fee award on March 21, 2011; however, the appeal was dismissed on April 13, 2011, for Plaintiffs' failure to pay the filing fee and for failure to complete required forms.[7]

### 4.     *FEDERAL COURT CASE*

An action was commenced by Plaintiffs and Donald Almanzar in federal court on November 23, 2010, alleging civil rights violations by the County, the court-appointed receiver, and 20 "Doe" defendants.  The gravamen of the federal case was also the improper motives of Defendants in the Nuisance Abatement Action, asserting Plaintiffs were deprived of their rights "to travel, to associate with others, to own real property, and to exercise general personal freedom/liberty without governmental interference or unequal treatment" because of their Hispanic names and origin and Defendants' racism. Plaintiffs sought $1,000,000 in general damages for each plaintiff, special and punitive damages, and injunctive relief against further discrimination.

The County moved to dismiss the federal action, which the federal court treated as a motion under Federal Rules of Civil Procedure, Rule 12(b)(6).  The federal court found abstention was proper under *Younger v. Harris* (1971) 401 U.S. 37, because there

---

[6] Plaintiffs assert they filed the dismissal because they chose instead to proceed in federal court.

[7] We take judicial notice of Court of Appeal case No. E053207.

was a pending state action involving important state issues.  The federal court dismissed all claims seeking injunctive relief and damages, without prejudice, as to Plaintiffs.**8**

B.　　CASE NO. RIC1115253:  CASE UNDER APPEAL

The complaint that is the subject of this appeal, case No. RIC1115253, was filed by Plaintiffs on September 15, 2011 (hereinafter, "the Complaint"); it was filed 14 days prior to Plaintiffs' filing of their fifth amended cross-complaint in the Nuisance Abatement Action.  It also springs from the Nuisance Abatement Action.  The Complaint states the Nuisance Abatement Action was filed because Smith "became angry and upset with [Plaintiffs]" and was "motivated by anti-Hispanic racial hatred." There is one cause of action in the Complaint, for "**VIOLATION OF FEDERAL CIVIL RIGHTS**," and it alleges Plaintiffs have been deprived "of their right and/or privilege to own and use property, to associate, and to be free of governmental intrusion based on racism."**9**  The Complaint sought $1,000,000 in damages for each plaintiff, special damages, "declaratory relief against the County, costs, and attorney's fees.

---

**8** Defendants assert the remainder of the case, as to Almanzar, was resolved by motion for summary judgment, which was granted in the federal court after the trial court proceedings at issue herein.  Plaintiffs do not dispute the point.

**9** Other posited constitutional rights are mentioned, such as "the right not to be discriminated against because of their Hispanic names and origin," the "right not to be deprived of their [p]roperties by using a receivership as a tool," "the rights of association and not to have their . . . tenants held against their will, subjected to slander, and submitted for psychological evaluation and false arrest," and the right "to travel . . . and to exercise general personal freedom/liberty without governmental interference or unequal treatment with respect to the provision/exercise thereof."  No violation of these rights is alleged in the cause of action.

The factual support for the Complaint comes from nine declarations filed in the Nuisance Abatement Action that plaintiffs allege the state courts have "passe[d] over" and failed to address.[10] The declarations were not attached to the Complaint in the Plaintiffs' Appendix and do not seem to have been filed with it, but appear to have been included as an attachment to Plaintiffs' opposition to the Anti-SLAPP motion. The declarations include the following allegations material to the Complaint:

Donald Almanzar: Declared he stored items and a mobile home on Plaintiffs' property, but did not live in the mobile home. He was handcuffed and arrested when he would not allow inspectors into his mobile home. It was a false allegation that he was living in the mobile home amid human excrement, as he did not live there and it was his dogs that "had messed up" the trailer. In a second declaration Almanzar declared the County had reneged on the offer of a free dumpster to use to remove trash from his property. The hourly rate charged by the County for a cleaning crew sent to his property was unreasonable. The Complaint asserts these declarations "document[] the discriminatory treatment of [Defendants] against [Almanzar]."

Dana Buckley: Declared he was tenant of Plaintiffs who performed handyman work in exchange for rent. He did not refuse to enter into a new lease with the receiver. Smith has disparaged James, saying James makes his money illegally. Smith told him he could make $250 an hour if the court appointed him as a receiver over Plaintiffs' properties. Smith is motivated by "personal animosity" against James. The Complaint

---

[10] Plaintiffs also provided an unsworn letter from Nina Scotti, which stated she stored items in a unit on one of Plaintiffs' properties.

asserts this declaration "document[s defendants'] employee's desires to use the receivership to cause [Plaintiffs] to lose their properties, as well as their racial discrimination."

Greg Rains: Declared he was a tenant of Plaintiffs who performed work in exchange for rent. He did not refuse to enter into a new lease with the receiver. The sheriff searched his home without a warrant and threatened to shoot his dog. Smith "made continuously disparaging remarks against [James]," including calling him "'nothing but a slumlord'" and a "dishonest" man who "made his money from illegal activities" such as "illegal sex parties." Smith "also made disparaging remarks about Mexico or Mexicans, which [Rains] took as racial comments directed to [James], who is Hispanic." The Complaint asserts this declaration "document[s defendants'] employees' racial discrimination."

Keith Ahearn: Declared he performed "odd-jobs [for James] as a grounds keeper." He was alarmed by a warning from two women who "introduced themselves as a Riverside County Attorney and the local Code Enforcement officer" that the property would be raided in three days (he did not state whether a raid took place on that schedule). Two months later he was asked by a Riverside County Deputy Sheriff if he was "safe." He did not understand why he was asked the question. The Complaint asserts this declaration "document[s defendants'] employees' racial discrimination."

8

Marc Wolff: Declared he was told by a building code enforcement officer that the property he was renting lacked a final inspection and permits; it was later condemned by the County. He complained to the officer about a competitor's property, which was allowed to have a display of a type that Wolff had to take down. He was told that the competitor's property was owned by James, who had many violations and whose property the county "was working on filing paperwork" to take away. He declared it was "detrimental to the interests of the citizens of the county, especially in these difficult economic times, to be taking actions" against people for code violations. The Complaint asserts this declaration "document[s defendants'] discriminatory practices."

Michael Higbee: Declared he was working on one of Plaintiffs' properties "in or about October 2008" when Smith and some code enforcement officers arrived. Smith told him he might as well stop working on the property because it was going to be torn down because "'this TJ construction is not going to fly in this county.'" He understood her comment to refer to Tijuana, Mexico. He "understood her comment to be demeaning of Hispanics" and a "blatantly racist comment" which was "startlingly offensive." The Complaint asserts this declaration "document[s defendants'] employee's racial discrimination."

David Chambers: Declared he was a licensed contractor who had worked for James; he was working on "property 4," owned by Plaintiffs, when it received approval

9

at a final inspection on February 9, 2005.**11**  The Complaint asserts this declaration "document[s defendants'] discriminatory practices against [Plaintiffs]."

Ron Helms:  Declared he was a former tenant of Plaintiffs.  The receiver for Plaintiffs' properties asked him to pay future rent to the receivership.  He was moving out; he declared no rent was due for the month he moved out.  The Complaint asserts this declaration "document[s defendants'] rush to act against [Plaintiffs] without reasonable cause"

The Complaint states these declarations "are all in addition to the declarations of [Plaintiffs], which have been given on many occasions and which further evidence the anti-Hispanic animus" of Defendants.  Only one such declaration is attached to the opposition to the Anti-SLAPP motion or the Complaint as provided in the Plaintiffs' Appendix, and it is the only declaration cited to in the briefing before us.  That declaration was made by James in his opposition to the Anti-SLAPP motion.  His declaration stated he was "Hispanic with an obvious Spanish last name, Gonzales."  That Smith made "degrading comments" to him "[o]n several occasions."  He specifically declared that Smith has said to him, "'This isn't Tijuana,'" and "'This isn't Mexico'" when touring his properties.  He was stunned by the comments and he "understood them to be very racist."  It was not alleged how often, when, where, to whom, and who was present when the statements were made.

---

**11**  The only mention of "property 4" in the Complaint related to the allegation by the County that James held "wild sex parties" there, although at least one version of the cross-complaints filed in the Nuisance Abatement Action includes claims related to that property, which may be related to the lack of a final inspection.

10

On December 1, 2011, Defendants filed a motion to dismiss the Complaint under the Anti-SLAPP law. A declaration by Smith dated November 28, 2011, was filed in support of the motion. Smith generally denied racial bias or animus. She admitted telling people that Plaintiffs' "refusal to clean up their properties would force the County to file a nuisance abatement action and would result in significant costs to plaintiffs." She also admitting saying the court could order demolition of unpermitted structures if Plaintiffs did not obtain proper permits. She admits saying "'this is not Tijuana,'" but asserts it was taken out of context. She declared James said he had seen single buildings combining commercial, industrial and residential usages, and that she responded, "the laws of the United States are different than the laws of Mexico," and separated residential space from industrial and commercial uses. Smith admitted calling James the "'most egregious slumlord in the County of Riverside'" in court and to his face. She admitted telling James and his tenants that renting unpermitted structures was illegal. She declared she had been told James's son "was arrested for activities related to illegal 'sex parties'" held on one of the properties; James's son told her James was involved. Smith also declared her maiden name was Sanchez and she had Hispanic ancestry. Plaintiffs' opposition to the Anti-SLAPP motion did not present evidence to contradict or address Smith's declaration.

The motion to dismiss was granted by a summary order filed on March 13, 2012. Although the order did not explain the ruling, the court set out its reasoning during oral argument of the motion. The court found Defendants had established the Complaint was filed in response to their activity in the Nuisance Abatement Action. The

remaining question for the court was whether Plaintiffs could meet the burden of showing a likelihood of prevailing on the merits of the Complaint. The court found, "the only comments that the Court can construe as being of a racial nature would be the comments of . . . Smith. And those are the comments by . . . Smith that 'This is not TJ' and 'This is not Mexico,' those two comments in particular." The court found that the context of those remarks made them innocuous. Plaintiffs' counsel argued that his proof was more than racist comments, but could only cite to the existence of similarly blighted property owned by "white neighbors."

As prevailing party, Defendants sought attorney's fees and expenses totaling $3,797.14. On May 11, 2012, Plaintiffs appealed the March 13, 2012, trial court's granting of Defendants' motion to dismiss.

## DISCUSSION

A trial court's ruling on an Anti-SLAPP motion is reviewed de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) The Anti-SLAPP statute, section 425.16, authorizes the trial court to strike a cause of action against a person arising from that person's exercise of constitutional rights to free speech and petition for redress of grievances. (§ 425.16; see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312.) The Legislature enacted the statute to provide an expeditious procedure to screen out meritless claims and thus discourage lawsuits brought primarily to chill the valid exercise of these constitutional rights. (*Flatley*, at p. 312.)

Subdivision (e) broadly defines the coverage of section 425.16: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United

12

States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Under section 425.16, the moving party, usually the defendant, bears the initial burden of showing that the cause of action arose from his or her acts in furtherance of rights to petition and free speech. (§ 425.16, subd. (b)(1); *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) "'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) If the defendant makes this showing that the challenged cause of action arises from protected activity, the burden shifts to the plaintiff to establish that there is a probability of prevailing on the merits of his or her claim. (§ 425.16, subd. (b)(1); *Zamos*, at p. 965.) To satisfy this requirement, the plaintiff must demonstrate that the complaint is legally sufficient and the elements of each claim are supported by a sufficient prima facie showing of facts such that, if the evidence submitted in support of these facts is credited, the plaintiff would be entitled to a favorable judgment. (*Zamos*, at p. 965.) The plaintiff may not rely on the complaint alone, but must produce

13

admissible evidence to support the elements of his claim.  (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 673 (*Paulus*).)

Plaintiffs here are defending a suit involving allegations of violations of civil rights.  Multiple cases hold that the Anti-SLAPP statute applies to causes of action based on section 1983 of title 42 of the United States Code.  (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1117-1118; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1400.)  The issues in an Anti-SLAPP motion are framed by the pleadings.  (*Paulus*, *supra*, 139 Cal.App.4th at p. 672.)  We independently review the pleadings and the affidavits submitted by the parties and determine whether the plaintiff has made a prima facie showing of facts necessary to establish a claim at trial.  (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 269, fn. 3; *Paulus*, at p. 672.)  The plaintiff may not rely on the complaint alone, but must produce sufficient evidence to support the elements of his claim.  (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364, fn. 5, disapproved on other grounds by *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68; *Paulus*, at pp. 672-673.)  "Rather than requiring the *defendant* to defeat the plaintiff's pleading by showing it is legally or factually meritless, the motion requires the *plaintiff* to demonstrate that he possesses a legally sufficient claim which is 'substantiated,' that is, supported by competent, admissible evidence."  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719.)  "We disregard declarations [lacking in] foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory."  (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.)

The role of the trial court is not to weigh the credibility or comparative strength of the parties' evidence. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) The court simply determines whether the defendant's evidence defeats a plaintiff's prima facie showing as a matter of law. (*Ibid*; *Colt v. Freedom Communications, Inc*. (2003) 109 Cal.App.4th 1551, 1557.) We "then independently determine, from our review of the record as a whole, whether [the plaintiff] has established a reasonable probability that he would prevail on his claims. [Citation.]" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 644-645.) "[T]hough the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]' [Citations.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.)

"[Title 42 United States Code section 1983] 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (*Albright v. Oliver* (1994) 510 U.S. 266, 271, quoting *Baker v. McCollan* (1979) 443 U.S. 137, 144, fn. 3.) Our state and federal Constitutions prohibit the state from denying any person equal protection of the laws. (U.S. Const., 14th Amend., § 1; Cal. Const., art. 1, § 7, subd. (a).) The essence of equal protection is that persons who are similarly situated with respect to the legitimate purpose of the law receive like treatment. (*City of Cleburne, Tex. v. Cleburne Living Center* (1985) 473 U.S. 432, 439; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) A plaintiff may bring a claim

under title 42 United States Code section 1983 based on a violation of the right to equal protection.  (*Fuller v. City of Oakland* (9th Cir. 1995) 47 F.3d 1522, 1533-1534.)

To recover damages from a governmental unit for an equal protection violation under title 42 United States Code section 1983, a plaintiff must show that the municipality's action was motivated by a "discriminatory intent or purpose."  (*Village of Arlington Heights v. Metropolitan Housing Development Corp*. (1977) 429 U.S. 252, 265.)  "[T]he invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose."  (*Washington v. Davis* (1976) 426 U.S. 229, 240.)  "Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement."  (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 832.)  Unequal application of a statute or rule to persons entitled to be treated alike is not a denial of equal protection, "unless there is shown to be present in it an element of intentional or purposeful discrimination."  (*Snowden v. Hughes* (1944) 321 U.S. 1, 8.)  What the equal protection guarantee prohibits is state officials "purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis."  (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 297.)

Subject to exceptions not applicable here, "a prevailing defendant on a [SLAPP] motion . . . shall be entitled to recover his or her attorney's fees and costs."  (§ 425.16, subd. (c)(1).)  "[A]ny SLAPP defendant who brings a successful motion to strike is

16

entitled to mandatory attorneys fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.)

A.    THE MOTION TO STRIKE

Respondent's filing of the Nuisance Abatement Action is the central element of the Complaint. It is undisputed for purposes of the Anti-SLAPP motion that it underlies Appellant's suit. Likewise, although Plaintiffs state the Anti-SLAPP statute "does not immunize personal vendettas, racial hatred, and the like," they do not dispute that Defendants were exercising the protected right to petition in connection with a public issue when they filed the Nuisance Abatement Action. Defendants having met their initial burden, it then shifts to Plaintiffs to show their complaint is legally sufficient and that there is sufficient admissible evidence to support the elements of their claim. (*College Hospital Inc. v. Superior Court*, *supra*, 8 Cal.4th at p. 719.)

The complaint frames the issues for the Anti-SLAPP motion. (*Paulus*, *supra*, 139 Cal.App.4th at p. 672.) In a single count, the Complaint asserts violation of Plaintiffs' civil rights through the deprivation of their rights to own property, to freely associate, and "to be free of government intrusion based upon racism."[12] The Complaint asserts Plaintiffs' "status as Hispanic persons" motivated Defendants' actions. There are statements that Plaintiffs and their friends have other asserted rights, such as the right not to be discriminated against, the right not to be deprived of their

---

[12] Defendants assert in briefing here and before the trial court that the Complaint should be read as seeking relief for malicious prosecution. The trial court did not find it necessary or proper to so recast the action, and neither do we.

properties by a receivership, the right not to be held against one's will or slandered, and the right to travel, but there is no charge in the cause of action that these rights were violated. Our review, then, focuses upon whether Plaintiffs have presented enough admissible evidence to show there is a probability that they will succeed in their claim. (*Zamos* v. Stroud, *supra*, 32 Cal.4th at p. 965.)

No relief exists for an abstract violation of section 1983 of title 42 of the United States Code; a claim may only be stated for substantive, specific federal rights conferred in our Constitution and Bill of Rights. (*Albright v. Oliver*, *supra*, 510 U.S. at p. 271; *Chapman v. Houston Welfare Rights Organization* (1979) 441 U.S. 600, 617. ["'one cannot go into court and claim a "violation of § 1983"—for § 1983 by itself does not protect anyone against anything'"].) There are no facts or argument setting out a violation of the right of association.[13] Likewise, the "right to own property" and the right to be free of government intrusion are not commonly understood on those terms as constitutional rights. In their briefing, Plaintiffs employ the phrase "unequal protection" as an explanation of their claim. Understanding Plaintiffs' claim as seeking redress for

---

[13] "'Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.' [Citation.]" (*City of Dallas v. Stanglin* (1989) 490 U.S. 19, 24.) If Plaintiffs intend such a claim, they have not presented it.

18

violation of their right to equal protection of the laws under the Fourteenth Amendment because of prejudice against their Hispanic heritage, we next consider the supporting evidence.

Plaintiffs disclosed their supporting evidence in response to the Anti-SLAPP motion. Nine declarations were discussed in the Complaint, but were not attached to the Complaint; the declarations were filed as exhibits to Plaintiffs opposition to the Anti-SLAPP motion.[14] Of these, the declarations of Almanzar, Ahern, Wolff, Chambers, and Helms contain nothing alleging any improper motives. The Buckley declaration asserts that Smith was motivated by "personal animosity," but there is no racial component alleged. As Almanzar gave two declarations, seven declarations cited as documenting Plaintiffs' claim fail to provide any supporting evidence.

Two third-party declarations have significance. Greg Rains stated that Smith "made disparaging remarks about Mexico or Mexicans, which [Rains] took as racial comments directed to [James], who is Hispanic." As testimony, this summary allegation is fatally unspecific: no specific terms, date, place, parties, or context are provided. Michael Higbee's declaration states that in October 2008, Smith visited him with some code enforcement officers while he worked on one of Plaintiffs' properties and told him "'this TJ construction is not going to fly in this county.'" He understood that comment to be "blatantly racist," "startlingly offensive," and "demeaning of

---

**14** As discussed *ante*, the unsworn, undated letter from Nina Scotti was also cited by Plaintiffs, but the contents are rank hearsay and not admissible evidence. In any event, the letter contains nothing alleging racial bias or deprivation of Plaintiffs' rights.

Hispanics, such as [James]." Higbee declared he called James and told him about the comment.

The Complaint indicates these declarations are in addition to declarations by the Plaintiffs, but, with one exception, none are present in the record. The only declaration by an appellant is one executed in 2012 by James. In it, he declared that Smith made "degrading comments" to him on several occasions that were "so racist that [he] did not believe a judge would believe [him]." James declared he "thought it best the racist comments [came] from third parties" to be presented to the court. As discussed above, the only relevant statements by third parties are the claim of general disparaging remarks by Rains and a reference to "TJ construction" by Smith as reported by Higbee. The only specific comment reported by James is that Smith said to him, "'This isn't Tijuana'" and "'This isn't Mexico'" when touring his properties. It is possible that these references to a Mexican city and to Mexico could be evidence of a hostile attitude toward people with a Mexican national origin, and, by extension, to people, such as Plaintiffs, with Hispanic surnames.[15]

Defendants have submitted a declaration from Smith that admits making reference to Tijuana and to Mexican building codes. She stated she mentioned Tijuana in response to a comment about how mixed property usage was allowed in Mexico. Her

_____

[15] James's declaration does not disclose whether he is of Mexican heritage. He states only that he has a Hispanic surname. We accept, for purposes of our analysis, that a bias against people of Mexican national origin can extend to people with Hispanic surnames. Similarly, we place no significance on the fact that Smith had a Hispanic surname until her marriage. Sharing circumstances with an identified subgroup does not immunize one from possessing prejudice against that group.

declaration also does not state where or when these statements were made, but does indicate they were made to James. In their briefing, Plaintiffs state those comments were made "without [Plaintiffs] even present," which appears to conflict with James's declaration testimony that they were made to him. In their briefing, Plaintiffs further contradict themselves by the incomplete argument that "specifically the 'this isn't TJ' statement was not made to Appellant James Gonzales as Smith claims (AA0052:20-27) but to xxx [*sic*]." Plaintiffs' uncertainty about their allegations detracts from their credibility.

Smith's explanation of the context of the remarks, in addition, provides a basis on which the trial court could properly find them innocuous. If the references to Tijuana or Mexican building codes were suggested by a comment from James, they are not invidious. Other than the tellingly incomplete arguments in briefing, Smith's explanation is undisputed. James's declaration, executed in response to Smith's declaration and two months afterwards, does not contravene her explanation of context and corroborates her assertion that she was speaking to him. At most, the remaining allegations of bias are composed only of fatally insufficient charges of general disparagement. Further, stray remarks like these cannot be the factual basis for a discrimination claim. (*Merrick v. Farmers Ins. Group* (9th Cir. 1990) 892 F.2d 1434, 1438.)

Plaintiffs attempt to demonstrate bias through citation of the allegations in the Complaint, counsel's advocacy at oral argument, and conclusory statements; none of those constitute competent evidence. (*Paul for Council v. Hanyecz*, *supra*, 85

21

Cal.App.4th at p. 1364, fn. 5; *Paulus*, *supra*, 139 Cal.App.4th at p. 673.) Lacking specific facts from which the trial court could derive an intent to purposely discriminate against Plaintiffs, it could not find that the otherwise proper enforcement of the land-use codes through the Nuisance Abatement Action was a denial of the right to equal protection of the laws.

Plaintiffs argue that the Nuisance Abatement Action was a racially based selective prosecution, by which similarly situated "Caucasian neighbors" had properties in "far worse conditions" and were operating storage businesses in identical buildings. This charge, too, is deficient in proof. There is no competent, admissible evidence that there are such littered lots or impermissible usages operated by Caucasians. Plaintiffs' briefing appears to cite a letter written by Plaintiffs' counsel to Smith as supporting evidence. Referencing two properties, counsel states, "the owner of this property is believed to be Caucasian," and "[a]gain, the owner is Caucasian," before concluding that Plaintiffs "are treated more harshly than Caucasian neighbors." No basis is given for those statements. That letter is not competent, admissible, or sufficient proof for Plaintiffs' allegations.

Further, the declarations supplied by Appellant contradict his own argument. Marc Wolff's declaration alleged that he had been harassed by Defendants, having to take down a commercial display, and he and his competitors suffered from "selective enforcement of supposed building and zoning violations." Wolff does not appear to have a Hispanic surname, and he does not state that any national origin or racial bias underlies the code enforcement actions. It is unsurprising that people subject to these

22

rules chafe under them and resent their application. No showing has been made, however, that Defendants have been enforcing the law in a biased manner.

Any civil rights claim sounding under section 1983 of title 42 of the United States Code, which relies upon the record before us, must fail. Plaintiffs did not submit sufficient admissible evidence for the court to find a probability they will prevail. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010; *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073-1074.) The motion to strike under Code of Civil Procedure section 425.16, the Anti-SLAPP Law, was properly granted.

B.      ATTORNEY'S FEES DURING THE PENDENCY OF THE APPEAL

Plaintiffs' opening brief contests both the grant of attorney's fees to Defendants and the trial court's refusal to stay the award during the pendency of the appeal. Defendants are entitled to attorney's fees as the prevailing party in an Anti-SLAPP motion. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1131.) The award of attorney's fees was a proper exercise of the court's power.

Plaintiffs intend to appeal the fee award, but have not filed a notice of appeal of the order awarding attorney's fees. The notice of appeal in this case was filed on May 11, 2012, before the ruling on the motion for attorney's fees. As a general matter, "a [party] who has not appealed from the judgment may not urge error on appeal." (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7.) We are therefore without jurisdiction to consider the question. (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1172; *Calhoun v. Vallejo City Unified School*

23

*Dist.* (1993) 20 Cal.App.4th 39, 41–42 [the notice of appeal must include the order appealed from].)**16**

On the record before us, the award of fees must be affirmed.

Defendants may seek attorney's fees incurred in this appeal from the trial court.

(*Lucky United Properties Inv., Inc, v. Lee* (2010) 185 Cal.App.4th 125, 139.)

## DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
J.

We concur:

RAMIREZ_____
P. J.

KING_____
J.

---

**16** As an independent ground, this failure also requires denial of plaintiffs' appeal of the attorney fee award.  The order awarding attorney's fees is not included in Appellant's appendix; after this fact was pointed out by Defendants, that failure was not addressed in Plaintiffs' reply brief.  An appellant's appendix is required to contain "[a]ll items required by rule 8.122(b)(1), showing the dates required by rule 8.122(b)(2)." (Cal. Rules of Court, rule 8.124(b)(1)(A).)  This includes any judgment and/or order appealed from and any notice of its entry, the register of actions, and documents "necessary for proper consideration of the issues, including, for an appellant's appendix, any item that the appellant should reasonably assume the respondent will rely on."  (Cal. Rules of Court, rules 8.122(b)(1)(B, C), 8.124(a)(2) & (b)(1)(B).)  Failure to provide an adequate record on an issue requires that the issue be resolved against Plaintiffs.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 ["It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error"].)

24