Filed 12/23/20  Marriage of White and Hunter CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of MORRIS HENRY WHITE and LINDA LUE HUNTER. | |
| MORRIS HENRY WHITE,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>LINDA LUE HUNTER,<br><br>    Respondent and Appellant. | A157398<br><br>(Alameda County<br>Super. Ct. No. HF05207861) |

Appellant Linda Lue Hunter, deceased, through her successor in interest, Micheaux Lucas, appeals the court's postjudgment order granting the motion of respondent Morris Henry White to strike Hunter's memorandum of costs after judgment, in which she had requested attorney fees incurred to enforce an underlying judgment; denying Hunter's request for attorney fees; and ordering Hunter and/or Hunter's counsel to reimburse White $17,231 in this matter arising after dissolution of the parties' marriage.  On appeal, Hunter contends (1) the court abused its discretion when it granted White's motion to strike Hunter's memorandum of costs and denied Hunter's request for attorney fees, and (2) White did not demonstrate

1

duress justifying reimbursement of the attorney fees he had already paid. We shall affirm the court's order.

## BACKGROUND

### *General Background*

The parties married in August 2003, and separated in January 2005. In April 2005, White filed a petition for dissolution of marriage, and judgment of dissolution was entered on July 18, 2007.

On October 4, 3007, after Hunter filed an order to show cause re contempt and White failed to appear at the scheduled hearing on the order to show cause, the court issued a bench warrant for White.

At a hearing on March 4, 2008, White appeared, the bench warrant was recalled, and the court adopted a stipulation and order of the parties as an order of the court. That stipulation and order provided in relevant part that, no later than May 4, 2008, White would pay Hunter $18,000, pursuant to the parties' marital settlement agreement signed on November 2, 2006, as well as $2,000 in attorney fees. The stipulation and order further provided: "Should payment not be made by the date set . . . above, [White] shall be responsible for [Hunter's] attorney's fees and costs in enforcing the payment arrangement as set forth above."

After White failed to make the agreed upon payment of $20,000 to Hunter by May 4, 2008, minute orders reflect that a number of hearings were held on that issue between 2008 and 2011, which included, inter alia, a January 27, 2009 minute order showing the matter was "dropped from the Calendar per stipulation of the parties." On October 17, 2011, Hunter recorded an abstract of judgment in Alameda County, where White owned real property that had been granted to him as his separate property in the March 4, 2008 order. Thereafter, a February 8, 2012 minute order stated

that the court "adopts the written agreement of the parties as the court order."[1]

The record does reflect any court activity from February 2012 until shortly after Steven G. Opperwall was added as one of Hunter's attorneys in October 2016. On November 3, 2016, Opperwall filed a "Memorandum of Costs after Judgment, Acknowledgement of Credit, and Declaration of Accrued Interest" (memorandum of costs) on Hunter's behalf, requesting a total of $19,897.55 in postjudgment costs pursuant to the March 8, 2004 stipulation and order, which included $19,752.55 in attorney fees incurred on "various" dates.

On January 27, 2017, Opperwall filed an "Application for and Renewal of Judgment" on behalf of Hunter, which requested a renewal of money judgment in the amount of $57,260.91. In addition to the original $20,000 included in the 2004 stipulation and order, the application listed $19,897.55 in costs, including attorney fees of $19,752.55; $17,333.36 in postjudgment interest; and a $30 filing fee for the renewal application.

On February 15, 2017, White filed a request to vacate the renewal of judgment and for sanctions, stating that he was unaware of any proceedings in the case since February 2012, and questioning the $19,897.55 in costs after judgment included in the renewal of judgment. On May 3, White also filed a request for an order that the memorandum of costs filed by Opperwall be set

---

[1] The agreement to which the court referred does not appear to be included in the record on appeal. However, in a 2017 declaration, White described the February 8, 2012 hearing as involving "my claim of exemption regarding a levy on my bank account. I was able to establish that most of the funds in my account were from my monthly pension benefit. The Sheriff was ordered to release the funds to me other than $550.00, which was distributed to Respondent."

3

aside based on inadvertence or excusable neglect, pursuant to Code of Civil Procedure section 473.[2]

At the July 20, 2017 hearing on these issues, the trial court (Hon. Delia Trevino) stated: "At our last hearing I said I needed some justification for $19,000 in attorney's fees. Why is there not a declaration? I asked opposing counsel [Opperwall], Do you have anything to support that? Because, yes, it is striking to me that in 2011 attorney's fees and costs were $25 and in 2016 they were at $19,000 but that's not the first question I have to ask. [¶] First, I have to know that procedurally everybody did what they were supposed to do. Unfortunately, your client failed so whether or not I think $19,000 is fair, whether or not . . . that's something I would have granted if I had been reviewing it in due course I can't say. But your client didn't do what was required of him by the statute so I'm going to deny your motion to set aside the judgment."

On August 11, 2017, the court entered an order denying White's request for relief under section 473 for failure to file a motion to tax costs within the statutory period after being served with the memorandum of costs. The court also denied White's request to vacate the renewal of judgment.

***Background Directly Relevant to the Issues Raised on Appeal***

On November 17, 2018, Opperwall, Hunter's attorney, filed another memorandum of costs on her behalf, requesting $17,442.25 for costs incurred during the previous two years, which included $17,231.25 in attorney fees.

On November 20, 2018, White filed a "Motion to Strike Memorandum of Costs and/or Tax Costs" (motion to strike/tax costs), arguing that (1) Hunter had recently died and her attorney could only file a memorandum of costs as

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

4

an attorney for Hunter's estate or a successor in interest, and (2) the attorney fees requested required the filing of a noticed motion, not a motion to tax costs.

At the January 2, 2019 hearing on White's motion to strike/tax costs,[3] the trial court (Hon. S. Raj Chatterjee) first said that it expected Opperwall to file any necessary documents to permit Hunter's daughter to become a successor in interest in the matter. The court then addressed the attorney fees issue and White's attorney, Ronald W. Summerour, argued that the fees requested in the memorandum of costs were both outside the scope of the stipulation and order and unreasonable. The court told Opperwall that it wanted to see the actual bills to determine what the fees were incurred for and if they were reasonable. In addition to resolving the successor in interest issue, the court also told Opperwall to file briefing to show the court "that the fees that you're asking for are, one, within the scope of the judgment, and, two, are reasonable." Summerour would then file responsive briefing and Opperwall would file a reply. The court indicated that its plan to address the issue on the merits and obtain further briefing eliminated the issue of whether a memorandum of costs was sufficient to claim fees incurred in enforcing the judgment, or whether Hunter was required to file a noticed motion for attorney fees, as Summerour argued.

Summerour then informed the court that White was in the process of selling his home and requested an order that a certain sum of money be withheld in escrow pending resolution of the attorney fees issue. Summerour also noted that Hunter had filed an abstract of judgment as a lien on the

---

[3] The discussions between the parties and the court at the two hearings in this matter, on January 2 and March 6, 2019, as well as related briefing and other court filings, will be set forth in detail here because of their relevance to our resolution of the issues raised on appeal.

house, which would have to be dealt with. Opperwall stated that he had submitted a payoff demand to the title company for just under $90,000, and that he believed at least $100,000 would have to be held back in escrow to cover all attorney fees, as well as the judgment and interest owed. The court responded, "why don't we keep $100,000 in escrow, or segregate it in an interest-bearing account."

In the minute order following the January 6, 2019 hearing, the court ordered Hunter to file supplemental briefing on her right to attorney fees by February 6, and also ordered that responsive and reply briefs were to be filed. The court further ordered that, "absent further court order or written agreement by the parties, [White] shall segregate and not disburse, a minimum of $100,000 from the proceeds of the sale of [White's] property located [in] Newark, CA." The court continued the matter to March 6, for further hearing.

On or about January 15, 2019, Summerour filed on behalf of White an ex parte application for temporary emergency orders for "Judgment Creditor's attorney to comply with order[,] that Judgment Lien be released [and for] Sanctions." The application also requested that the court order "Judgment creditor's attorney to deposit any documents necessary to release the judgment lien of Judgment creditor conditional upon the withholding of $100,000 in escrow, which shall not be released pending further written agreement of parties or court order."

In a declaration in support of the ex parte application, White stated that he expected his net proceeds from the sale of his home to be approximately $300,000 and that "[e]scrow was scheduled to close on Monday, January 14, 2019, but [Hunter's] attorney has refused to release the lien of judgment creditor even if $100,000.00 is withheld in escrow pursuant

6

to the court's order. I have already made arrangements to move from my residence to an apartment I have rented. I have been told by the buyer that he and his family plan on moving into the residence soon after the close of escrow. If judgment creditor's attorney continues to refuse to release the lien, I will not be able to close escrow and the buyer is expected to rescind the contract. I not only will be exposed to liability to a claim for damages by the buyer but will continue to incur the cost of the apartment I intended to move into after the sale." White attached to his declaration an email from Opperwall to the escrow officer on January 9, 2019, in which Opperwall wrote: "For there to be a payoff demand, Morris White would have to withdraw his 'motion to tax and strike' in this underlying lawsuit" so that Opperwall could determine what the full payoff amount would be, once his most recently incurred attorney fees were added to the payoff demand.

On January 17, 2019, the court denied the ex parte application for emergency orders and set the matter for hearing on February 13, 2019.[4]

On January 18, 2019, Opperwall filed the declaration of Micheaux Lucas as successor in interest to Hunter.

Also on January 18, 2019, Opperwall filed an "Acknowledgement of Satisfaction of Judgment" stating that White had satisfied the judgment in full.

On January 25, 2019, Opperwall filed a document with the court entitled, "Declaration of Stephen G. Opperwall Regarding Resolution of Issues and Claims Regarding Payment of the Judgment/Order dated 3/4/08," in which he stated that escrow on White's house had closed on January 18, 2019, after White and Hunter "had agreed and submitted written escrow

---

[4] This hearing was subsequently cancelled due to nonappearance of the parties.

7

instructions that [White] would pay $96,058.63 in complete satisfaction of all amounts owed up through that date," in exchange for a recordable acknowledgement of satisfaction of judgment, "all as complete resolution of the pending claims and issues between [the parties] pursuant to the unpaid Judgment/Order dated 3/4/08."

Opperwall further stated in his declaration that although "[t]here were discussions about segregating money in the escrow, and having future litigation[,] [t]hat turned out to be unworkable and impossible. The escrow company . . . stated that it does not hold money after the close of escrow" and "[t]here was no other mechanism for holding money." Opperwall's declaration continued: "As a result, it came down to [White] either: a) agreeing to pay the judgment (with accrued interest, attorneys' fees, and costs as claimed by [Hunter]) to get a recordable Acknowledgement of Satisfaction of Judgment and lien release, or b) refusing to go through with the sale of his house. [¶] [White] chose the former of the two alternatives and [White] signed escrow instructions to pay $96,058.63 to [Hunter]" and escrow closed as agreed by the parties in their joint written escrow instructions. Opperwall's declaration concluded, "The earlier issues from 1/2/19 have been completely resolved, and there are no remaining issues for further litigation on that subject in this case."

Opperwall did not file a declaration, points and authorities, or any documentation on the issue of whether the requested attorney fees were within the scope of the judgment or reasonable, as the court had ordered him to do on January 2, 2019.

On February 27, 2019, Summerour filed a responsive declaration in opposition to the request for attorney fees. After recounting the court's order to hold back $100,000 from escrow in a blocked account, Summerour stated

8

that "[b]ecause escrow could not close without obtaining a release of lien created by the abstract of judgment from [Hunter's] attorney, the obvious implication of the court's order was that [Hunter's] attorney would release the lien created by the abstract of judgment upon the withholding of $100,000.00 as a source of funds to fully satisfy any possible claims by the judgment creditor." Summerour further stated that Opperwall "demanded that the full amount due under the judgment, including the additional attorney's fees to be fixed by court order, be paid," and "[b]ecause [White] could not close escrow without authorizing the payoff demand of [Hunter's] attorney in the sum of $96,058.63 as a condition for the delivery of a satisfaction of judgment and his failure to close escrow would expose him to a claim for damages by the buyer, [White] authorized the escrow officer to comply with the payoff demand payment made by [Hunter's] attorney." Summerour further stated that White "did not willingly consent to authorizing escrow to honor the payoff demand of [Hunter's] attorney and acted under duress."

Summerour concluded that because Hunter's "attorney has neglected to file a supporting declaration as required by the court and has provided absolutely no evidence from which the court could conclude that the requested fees were reasonable or within the scope of the order authorizing the payment of attorney's fee[s] . . . , the court is requested to order [Hunter's] attorney to immediately return the sum of $17,231.25 plus any accrued interest included in the payoff demand, to [White]."

In addition to the declaration and numerous attached documents, Summerour filed a memorandum of points and authorities in which he argued that the escrow instructions were agreed to under duress, that a noticed motion was required to request attorney fees, and that the fees

9

requested were outside of the scope of the March 2008 order that was the basis for the attorney fees request.

Subsequently, at the March 6, 2019 hearing, Opperwall told the court that the title company would not withhold $100,000 from escrow pending a determination of Hunter's entitlement to attorney fees, as the court had ordered. The court responded that the money could not be withheld because the title company was required to pay the money to Hunter based on Opperwall's refusal to lift the lien. At that point, the court said to Opperwall, "I'm going to listen to you, but I am really concerned a fast one has been pulled on the court."

The court then recounted what had taken place at the last hearing. Specifically, it explained that it had dealt with Summerour's concern about the need for a noticed motion rather than a memorandum of costs to request attorney fees claimed to have been incurred in enforcing the judgment by "a process that was a de facto motion. You [Opperwall] were going to file your papers to explain to the court why you're entitled to the attorney's fees. They have to be within the scope of the order. They have to be reasonable. Maybe other issues, but those two are the minimums, right? They had an opposition and a reply brief. So we had a process to resolve the attorney's fees that was submitted, that was pending before the court."

The court then stated that it had put a process in place to ensure that $100,000—to cover both the amount of the judgment and the contested attorney fees—would not be disbursed to White upon sale of his home, but would be placed in a blocked account pending a decision on attorney fees. Instead, as the court observed, Opperwall had refused to release the lien, thereby putting White "in the position where he had to either breach the contract to sell the house because—and not close the transaction, or pay off

10

the lien, okay?  Either way; he can incur possible damages and possible harm . . . . [¶] . . . [¶] Now [Hunter] says, hey, I've been paid.  I got to go.  This issue is moot.  And the court lost jurisdiction over the issue that was pending.  Tell me that's not what happened."

Opperwall responded that he had refused Summerour's offer to put the $100,000 into Summerour's client trust account or a joint trust account because he did not think that was permissible.  He had told Summerour that if White were to withhold $125,000 (with the $25,000 added for Opperwall's additional expected attorney fees) and "find a way to remove the lien," that would be acceptable to Hunter.  Opperwall explained to the court that when that did not happen, "I took the attorney's fees that had been claimed last year in the Memorandum of Costs After Judgment, which is suitable."  When Opperwall further stated that White had not challenged the reasonableness of the fees in his motion to strike/tax costs, the court responded that he had done so in his opposition papers, as the court had requested.

Opperwall then noted that the court's January 2, 2019 minute order had given the parties the option of entering into a written agreement instead of continuing to litigate the attorney fees question.  According to Opperwall, the parties had entered into such an agreement through the escrow instructions and the court was now without jurisdiction to address the attorney fees issue.

Summerour stated that White had agreed to Hunter's receipt of the full $96,058.63 payoff demand through escrow under protest to avoid a breach of contract with the buyer, as he had explained in his ex parte application for temporary emergency orders, which the court had denied.  The court responded that it had denied the ex parte application because it was not clear that the escrow amount covered the same fees pending before the court and

11

"[i]t did not occur to me that the lawyers would try to undercut the court's jurisdiction on a pending issue."

When the court asked what the attorneys believed it should do if it found that the approximately $17,000 in attorney fees claimed by Hunter did not fall within the scope of the stipulation, as Summerour had argued, Summerour said the attorney fees included in the escrow payoff demand should be returned to White. Opperwall responded that White had been under no compulsion to agree to the payoff demand and that he could have delayed the close of escrow if he did not want to pay the $100,000 to Hunter.

At the conclusion of the hearing, the court took the matter under submission.

On May 6, 2019, the court entered an order that stated:

"1. [White's] Request for Order to strike the memorandum of costs in connection with [Hunter's] request for attorney's fees in the amount of $17,231 is GRANTED. To be clear, [Hunter's] request for same attorney's fees is DENIED.

"2. For the reasons set forth in [White's] filings, [Hunter] and/or [Hunter's] counsel shall reimburse [White] the sum of $17,231 for the disbursement of any payoff demands distributed to [Hunter] and/or [Hunter's] counsel from escrow following the sale of the Newark residence based on [Hunter's] claim for any attorney's fees at issue in this action. Any amounts owed [are] due within 30 days from this date."

On June 3, 2019, Hunter filed a notice of appeal.

## DISCUSSION

### I. *The Need for Noticed Motions to Support Arguments For and Against Hunter's Attorney Fees Request*

We reject the parties' dueling procedural arguments regarding (1) whether the trial court should have required Hunter to file a noticed motion

12

regarding her right to attorney fees, rather than a memorandum of costs, and (2) whether the court should not have considered whether the attorney fees were reasonable or within the scope of the underlying judgment because those issues were not raised in White's motion to strike/tax costs.  (See §§ 685.070, subds. (a)(6), (b) & (c); 685.040; § subds. (a)(10)(a) & (c)(5)(A).)[5]

The trial court told counsel at the January 2, 2019 hearing that, even were it to assume that a noticed motion with points and authorities would be required for Hunter to claim attorney fees, as White argued, its plan to address the issue on the merits and obtain further briefing from both parties eliminated that issue.  The court told Opperwall that it expected to see his actual bills to determine what they were incurred for and if they were

---

[5] Section 685.070, subdivision (a)(6) provides:  "The judgment creditor may claim under this section the following costs of enforcing a judgment:  [¶] . . . [¶] (6) Attorney's fees, if allowed by Section 685.040."  Subdivision (b) of section 685.070 provides in relevant part:  "Before the judgment is fully satisfied but not later than two years after the costs have been incurred, the judgment creditor claiming costs under this section shall file a memorandum of costs with the court clerk and serve a copy on the judgment debtor. . . ."  Subdivision (c) of section 685.070 provides in relevant part:  "Within 10 days after the memorandum of costs is served on the judgment debtor, the judgment debtor may apply to the court on noticed motion to have the costs taxed by the court. . . ."

Section 685.040, cited in subdivision (a)(6) of section 685.070, provides:  "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment.  Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law.  Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5."

Section 1033.5, subdivision (a)(10)(A), cited in section 685.040, provides:  "The following items are allowable as costs under Section 1032:  [¶] . . . [¶] (10) Attorney's fees, when authorized by any of the following:  [¶] (A) Contract."

13

reasonable and that Opperwall was to file briefing to show the court "that the fees that you're asking for are, one, within the scope of the judgment, and, two, are reasonable." The court would then require Summerour to file opposition papers and Opperwall to file a reply. Likewise, to the extent Hunter asserts that White should have argued in his motion to strike/tax costs that the fees were unreasonable or not within the scope of the judgment, as we have just noted, those issues were raised and discussed at the January 2, 2019 hearing, and the court explicitly required the briefing to address those issues.[6]

Thus, both parties were given the opportunity to fully litigate these issues, along with any others they believed relevant to Hunter's request for attorney fees, and the court had jurisdiction to consider the attorney fees request on the merits. (Cf. *Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 781 [finding that even if defendants "should have denominated their motion as one to tax costs rather than a motion to strike, any error in this regard did not deprive the trial court of jurisdiction to consider the issue [of plaintiff's right to recover attorney fees under section 685.070] on the merits"].)

## II. *The Propriety of the Court's Order Granting White's Motion for an Order Striking Hunter's Request for $17,231 in Attorney Fees, Denying Hunter's Request for $17,231 in Attorney Fees, and Ordering Hunter to Reimburse White the Sum of $17,231*

As noted, in its May 6, 2019 order, the court both granted White's motion to strike Hunter's memorandum of costs, which had requested $17,231 in attorney fees, and denied Hunter's request for those same attorney fees. It also ordered Hunter to reimburse White the full amount of the fees paid to her after the close of escrow on White's house.

---

[6] However, as we shall discuss further in part II.B., *post*, of this opinion, only White complied with the court's orders to brief these issues before the March 6, 2019 hearing.

Hunter's opening brief is devoted primarily to arguing the purported propriety of making the attorney fees request in a memorandum of costs rather than a noticed motion, and the purported impropriety of White opposing that request in a motion to strike/tax costs, rather than a noticed motion, arguments we have already found to be meritless in part I., *ante*, of this opinion. Boiling down the remaining assortment of arguments set forth in Hunter's opening and reply briefs, she appears to contend (1) the trial court abused its discretion when it granted White's motion to strike/tax costs, and (2) White failed to provide any evidence of duress with respect to inclusion of the contested attorney fees in the escrow instructions and, in any event, the court's remedy—to reimburse White the $17,231 in contested attorney fees—was improper.

## A. *Order Granting White's Motion to Strike Hunter's Request for $17,231 in Attorney Fees and Denying Hunter's Request for Those Same Fees*

Hunter contends the court abused its discretion when it "summarily award[ed] $17,000+ to White without a noticed motion" and that it "should have order[ed] White to deposit $100,000 with the court or an escrow, and [ordered] Hunter to file a noticed motion for attorneys' fees."

In fact, on January 2, 2019, the court *did* order White to "segregate and not disburse, a minimum of $100,000 from the proceeds of the sale of [his] property" and White *did* attempt to do so. It was Hunter who refused to release her lien on White's house and follow the court's order to hold back $100,000 from the proceeds of the sale in a separate account until the court determined the propriety of the fees requested.[7]

---

[7] This left White with no option but to close escrow on the terms demanded, to avoid breaching his contract with the buyer of his home. (See pt. II.B., *post*, regarding duress issue.)

15

As already discussed in part I., *ante*, on January 2, 2019, the court ordered Hunter to "file and serve supplemental papers" on the attorney fees question, in lieu of a noticed notion, and Opperwall expressly agreed to brief the issues of whether the requested fees were reasonable and within the scope of the March 2008 stipulation and order. However, instead of doing so, Opperwall informed Summerour that the only way White could close escrow on his residence in a timely way was to accede to Hunter's payoff demand in escrow, which included the disputed $17,231 in attorney fees. Then, instead of filing briefing, a declaration, and supporting documentation addressed to the reasonableness and propriety of the attorney fees requested, Opperwall filed a declaration on January 25, 2019, stating that White had "signed escrow instructions to pay $96,058.63 to [Hunter]," that escrow closed as agreed by the parties in their joint written escrow instructions, and that "[t]he earlier issues from 1/2/19 have been completely resolved, and there are no remaining issues for further litigation on that subject in this case."

On February 27, 2019, Summerour filed a responsive declaration that first discussed the circumstances surrounding the close of escrow and explained that White did not willingly consent to the payoff demand by Opperwall, which he stated was in violation of the court's order. Summerour then pointed out that on January 2, 2019, the court had ordered Opperwall "to file a supplemental declaration by February 6, 2019, in support of his request for additional attorney's fees of $17,231.25 as requested in the Memorandum of Costs . . . , and make a showing that the requested attorney's fees were reasonable and within the scope of the court order permitting an award of attorney's fees." Summerour further stated that Opperwall "has neglected to file a supporting declaration as required by the court and has provided absolutely no evidence from which the court could

16

conclude that the requested fees were reasonable or within the scope of the order authorizing the payment of attorney's fee[s]." Summerour also filed, inter alia, copies of correspondence between the parties' attorneys and documentation from the sale of White's house as exhibits to his declaration.

Summerour also filed, on behalf of White, a "Memorandum of Points and Authorities in Opposition to [Hunter's] Request For An Award of Attorney's Fees" in which he argued that (1) White's written escrow instructions authorizing payment of Hunter's payoff demand as a condition of delivery of an Acknowledgement and Satisfaction of Judgment was made under duress and did not constitute resolution of all issues related to Hunter's entitlement to attorney fees, (2) Hunter's request for attorney fees should have been made by a noticed motion, and (3) the request for attorney fees should be denied as not within the scope of the order underlying the attorney fees request.[8] Opperwall filed no reply on Hunter's behalf.

In light of this series of events following the January 2, 2019 hearing, it is clear that it was Hunter who failed to provide any argument or evidence regarding the reasonableness or propriety of her request for attorney fees, despite the court's order to do so. Instead, Opperwall, on behalf of Hunter, asserted only that the matter had been settled and the issue was moot.

---

[8] In particular, Summerour argued that "any attorney's fees incurred by [Hunter] were associated with the proceedings filed by [White] in 2017 in which he challenged [Hunter's] inclusion of attorney's fees in a Memorandum of Costs After Judgment and that the attorney's fees now requested by [Hunter's] attorney were not related to the enforcement of [White's] obligation under the Judgment."

It was not possible for White to directly challenge the *reasonableness* of Hunter's attorney fees request, given Opperwall's complete failure to provide any of the supporting documentation the trial court said was needed to make that determination.

17

We therefore conclude Hunter forfeited the issues raised on appeal related to the reasonableness of the requested attorney fees and whether they were within the scope of the March 2008 stipulation and order by failing to provide the trial court with any argument, declarations, or supporting documentation on those issues from which the court could make a reasoned determination on the merits. (See *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897 [" ' " ' " [I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore arguments, authority and facts not presented and litigated in the trial court' " ' " ' "].)

Our finding of forfeiture is also based on Hunter's failure to provide any argument in her opening brief on appeal regarding the reasonableness of the attorney fees requested or whether the claimed fees are within the scope of the underlying order. (See *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 (*Paulus*) ["Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge"].) In addition, the abbreviated argument on the latter question in Hunter's *reply* brief merely includes a few conclusory sentences, with no citation to legal authority. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must "support each point by argument and, if possible, by citation of authority"];[9] see also *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "].) For both of these reasons as

[9] All further rule references are to the California Rules of Court.

well, Hunter has not preserved for appeal the issues of the reasonableness of fees and whether they were within the scope of the March 2008 order.

**B.** ***Order Requiring Hunter to Reimburse White in the Amount of $17,231 for the Disbursement of that Sum to Hunter Following the Sale of White's Residence***

The trial court ordered Hunter and/or her attorney to reimburse White $17,231 "for the reasons set forth in [White's] filings for the disbursement of any payoff demands distributed to [Hunter] and/or [Hunter's] counsel from escrow following the sale of the Newark residence based on [Hunter's] claim for attorney's fees at issue in this action."

Under section 685.070, when a judgment creditor requests attorney fees incurred in enforcing a judgment as costs in a memorandum of costs and the request for fees is opposed by a motion to tax costs, "[t]he court shall make an order allowing or disallowing the costs to the extent justified under the circumstances of the case." (§ 685.070, subd. (c).) Whether an award of attorney fees is based on statutory or contractual provisions, " ' "[t]he trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles." ' [Citations.] 'This determination is necessarily ad hoc and must be resolved on the particular circumstances of each case.' [Citation.]" (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 954.)

In this case, the "reasons set forth in [White's] filings"—referred to by the court when it ordered Hunter and/or her attorney to reimburse White for the $17,231 in contested attorney fees that were paid to Hunter through escrow—were that (1) White's payment of that amount was made under duress, and (2) Opperwall had violated section 724.070 by demanding

19

payment of the contested attorney fees to which he was not yet entitled pending further court order, which required return of those funds to White.[10]

Hunter has not challenged White's claim of entitlement to reimbursement of the amount of the disputed attorney fees pursuant to section 724.070, either in the trial court or in any of her briefing on appeal. Consequently, she has forfeited that issue on appeal and we will presume such an entitlement to reimbursement under that section, if substantial evidence supports White's claim of duress. (See *Gray1 CPB, LLC v. SCC Acquisitions, Inc.*, *supra*, 233 Cal.App.4th at p. 897; see also *Paulus*, *supra*, 139 Cal.App.4th at p. 685.)

" 'The underlying concern of the economic duress doctrine is the enforcement in the marketplace of certain minimal standards of business ethics. Hard bargaining, "efficient" breaches and reasonable settlements of good faith disputes are all acceptable, even desirable in our economic system.' [Citation.] But, the system disdains 'the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value. . . . The economic duress doctrine serves as a last resort to correct these aberrations when conventional alternatives and remedies are unavailing.' [Citation.] [¶] Economic duress requires an unlawful or 'wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.' [Citation.]" (*Hester v. Public Storage* (2020) 49 Cal.App.5th 668, 679 (*Hester*), quoting *Rich &*

---

[10] Section 724.070, subdivision (a) provides: "If a judgment creditor intentionally conditions delivery of an acknowledgment of satisfaction of judgment upon the performance of any act or the payment of an amount in excess of that to which the judgment creditor is entitled under the judgment, the judgment creditor is liable to the judgment debtor for all damages sustained by reason of such action or two hundred fifty dollars ($250), whichever is the greater amount."

*Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1159 (*Rich & Whillock*).)

" 'The question of economic duress . . . is a factual question; the existence of duress always depends upon the circumstances.' [Citation.]" (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 645 (*CrossTalk Productions*); see also *Rich & Whillock, supra,* 157 Cal.App.3d at pp. 1156, 1161 [substantial evidence supported trial court's finding that a settlement agreement and release signed by plaintiff were products of economic duress].)

Here, even assuming Hunter did not forfeit the issue of duress due to her failure to provide any genuine argument or citation to authority on this issue in her opening brief on appeal (see rule 8.204(a)(1)(B); *Paulus, supra,* 139 Cal.App.4th at p. 685 ),[11] we conclude substantial evidence supports the court's implied finding of economic duress based on the evidence and

---

[11] Hunter's sole discussion in her opening brief that is even arguably related to duress is one page long and essentially involves a claim that the court erred in taking "any action at all after the parties had reached a settlement involving White paying money through escrow in exchange for Hunter providing an executed Acknowledgement of Satisfaction of Judgment, because the case was then formally and officially concluded by the filed Acknowledgement of Satisfaction of Judgment. . . . [¶] . . . [¶] It was error for the Superior Court to take action at that point."

In her reply brief, Hunter asserts that the trial court improperly issued an order that "summarily determined rights without even having them briefed, including the 'duress' claim by White." As already noted, White fully briefed this issue in the trial court, filing a memorandum of points and authorities, a declaration, and supporting documentation in February 2019, and the issue was also discussed in depth at the March 6 hearing. It was Hunter who failed to brief the issue in the trial court, with Opperwall stating in a January declaration only that the parties had settled the matter and the court's jurisdiction to address the attorney fees issue had therefore terminated.

argument presented at the March 6, 2019 hearing and filed with the court on behalf of White. (See *CrossTalk Productions*, *supra*, 65 Cal.App.4th at p. 645; *Rich & Whillock*, *supra*, 157 Cal.App.3d at pp. 1156, 1161.)

Hunter argues in her reply brief that the case terminated when "White agreed to a settlement of the entire case whereby Hunter would provide an Acknowledgement of Satisfaction of Judgment to Old Republic Title in exchange for payment of $96,058.63 in the context of White's sale of his house." According to Hunter, this complied with the language in the court's January 2, 2019 order that the case could be concluded through "written agreement by the parties." Plainly the court did not see it that way when it told Opperwall at the March 6 hearing—at which it had anticipated hearing argument and deciding the attorney fees question—that it was "really concerned a fast one has been pulled on the court."

Moreover, Hunter states in her reply brief that White "[l]ater claimed that he agreed to [settle the matter] pursuant to 'duress.'" This statement ignores White's ex parte application for temporary emergency orders, filed on January 15, 2019, *before* the close of escrow, in which he asked the court for assistance in avoiding the coercion and resulting damage he would suffer from Opperwall's refusal to segregate money from the amount White was to receive upon close of escrow and Opperwall's insistence on instructions to the title company to pay Hunter an amount that included the contested fees upon the close of escrow. The court stated at the March 6, 2019 hearing that when it had denied the ex parte application, it had not understood that the escrow amount covered the same fees pending before the court, and that "[i]t did not occur to me that the lawyers would try to undercut the court's jurisdiction on a pending issue."

In her reply brief, Hunter also provides various hypothetical scenarios that purportedly would have allowed White to avoid the settlement that ended the litigation between the parties, and which therefore defeat White's claim of duress. For example, she makes the outrageous complaint that "White did not segregate *any* funds from the proceeds of the sale of his house." This is exactly what Summerour had attempted to do on White's behalf, but was precluded from doing so by Opperwall's refusal to agree to a method of holding that money aside or to allow escrow to close without instructions that Hunter would receive the entire $96,058.63 payoff demand.

Hunter also asserts that "White had multiple options available to him because he had a house that was worth $900,000 and he had equity of more than $410,000 that he could have used years earlier to get a home equity line of credit to pay off the debt to Hunter . . . ." This case, however, is not about White's underlying debt to Hunter, his failure to pay that debt in a timely manner, and ways he could have satisfied the debt years earlier. Those issues were previously decided in Hunter's favor and are not in dispute in this case. Also not in dispute is the fact that the principal amount White owed to Hunter plus interest, along with the 2017 award of attorney fees, were ultimately to be paid to Hunter with proceeds from the sale of White's house. Rather, the only money at issue here is the attorney fees claimed by Hunter in the present matter, which she maintains were incurred by her attorney in the prior litigation regarding her entitlement to an award of attorney fees in 2017. In this case, the court had not yet decided whether Hunter was in fact entitled to the most recent fees when Opperwall insisted on behalf of Hunter that they be included in the payoff instructions to the title company if White wanted to close escrow in a timely manner.

Hunter further argues in her reply brief that "White also could have delayed the close of escrow to all[ow] the litigation in Superior Court to conclude, if White truly wanted to keep litigating." Without restating in detail all of the reasons set forth in White's filings and at the March 6, 2019 hearing regarding why he could not delay the close of escrow without likely incurring great expense, the court plainly found compelling the evidence that White acted under duress when he agreed to the inclusion of $17,231 in contested attorney fees in the escrow instructions.

The circumstances in this case supporting a finding of economic duress are similar to those underlying the Fourth District's opinion in *Rich & Whillock*, in which plaintiff company had performed excavation and grading work for defendants, who refused to pay the balance due at the end of the project based on a claim that they had no money left to pay the final bill. (*Rich & Whillock, supra*, 157 Cal.App.3d at p. 1156.) Plaintiff informed defendants that it would " 'go broke' " if not paid because it was a new company and had numerous subcontractors waiting to be paid. Defendants responded that they would pay plaintiff "$50,000 or nothing, and [plaintiff] could sue for the full amount if unsatisfied with the compromise." (*Id.* at p. 1157.) Defendants then presented the plaintiff with an agreement for a final compromise payment of $50,000. After telling defendants the agreement was " 'blackmail' and he was signing it only because he had to in order to survive," plaintiff's owner signed the agreement, received the partial payment, and signed a standard release form. (*Ibid.*)

After plaintiff filed an action for damages for breach of contract, the trial court found that the defendants were liable for the balance due under the contract and that the purported agreement for a lesser payment and the release were unenforceable due to economic duress. After "impliedly" finding

24

that defendants had acted in bad faith, the trial court concluded the agreement and release were signed " 'under duress in that plaintiff felt [it] would face financial ruin if [it] did not accept the lesser sum and that defendants, knowing this, threatened no further payment unless plaintiff accepted the lesser sum.' " (*Rich & Whillock*, *supra*, 157 Cal.App.3d at p. 1157.)

The appellate court affirmed the judgment, finding that defendants had acted in bad faith when they refused to pay plaintiff's final billing and instead offered to pay a compromise amount, knowing that plaintiff was a new, overextended company that faced bankruptcy if not paid its final billing. (*Rich & Whillock*, *supra*, 157 Cal.App.3d at p. 1160.) The appellate court noted that plaintiff had "strenuously protested" defendants' "coercive tactics, and succumbed to them only to avoid economic disaster." (*Id.* at pp. 1160–1161.) Under those circumstances, the appellate court concluded that the trial court's finding that the agreement and economic release were the product of economic duress was supported by substantial evidence and that, therefore, its finding that the defendants were liable for the balance due under the contract was correct. (*Id.* at p. 1161.)

Here too, the evidence supports the trial court's implied finding that Hunter acted in bad faith when she refused to release the lien on White's house and place $100,000 of White's proceeds after the close of escrow into a blocked account, as previously agreed to by the parties and as reflected in the court's January 2, 2019 minute order. Specifically, the evidence in the record shows that Opperwall, on behalf of Hunter, insisted on the full payoff amount of $96,058.63 contained in Hunter's judgment lien even though it included the contested attorney fees and even though he knew that White would be harmed by the failure to timely close escrow. The only alternative Opperwall

25

offered was for White to "find a way to remove the lien" and to place $125,000—which included an additional $25,000 in attorney fees to Hunter beyond the total amount the court had ordered set aside—into a separate account. (See *Rich & Whillock*, *supra*, 157 Cal.App.3d at p. 1160.) Although Opperwall asserted that there was no workable mechanism for holding the $100,000 pending the subsequent hearing, Summerour had offered more than one option for holding the $100,000 and the court plainly disbelieved Opperwall's claim. The evidence also shows that White "strenuously protested" these "coercive tactics," and agreed to the escrow instructions and Hunter's payoff demand only to avoid, among other things, a likely action for damages by the buyer of his home for breaching their contract to close escrow in a timely manner. (*Id.* at pp. 1160–1161.)[12]

The evidence thus shows, as in *Rich & Whillock*, a coercive, wrongful act on the part of Hunter that gave White " 'no reasonable alternative [but] to succumb to [Hunter's] pressure' " to agree to the escrow instructions insisted upon. (*Hester*, *supra*, 49 Cal.App.5th at p. 679; see *Rich & Whillock*, *supra*, 157 Cal.App.3d at p. 1159.) As the court stated at the March 6, 2019 hearing, Opperwall's actions on behalf of Hunter placed White "in the position where he had to either breach the contract to sell the house because—and not close

---

[12] Summerour attached as an exhibit to his February 27, 2019 responsive declaration in opposition to Hunter's request for attorney fees the following email he sent to Opperwall on January 18 regarding the pending close of escrow: "Mr. White decided not to risk a loss of the pending sale of his residence or expose himself to a possible lawsuit by the buyer by not closing escrow because of your refusal to submit a pay-off demand in compliance with the court's order. However, you are requested to place the funds in a segregated, interest bearing account as ordered by the court. Mr. White's decision to have your pay-off demand paid through escrow should not be construed as acceptance of your demand and your violation of the court's order."

the transaction, or pay off the lien, okay? Either way; he can incur possible damages and possible harm . . . . [¶] . . . [¶] Now [Hunter] says, hey, I've been paid. I got to go. This issue is moot. And the court lost jurisdiction over the issue that was pending. . . ." Substantial evidence supports the court's implied finding that White demonstrated that his agreement to the escrow instructions Hunter insisted upon was a product of economic duress. (See *Hester*, at p. 679; *CrossTalk Productions*, *supra*, 65 Cal.App.4th at p. 645; *Rich & Whillock*, at pp. 1156, 1159, 1161.)

### III. *Conclusion*

Based on the totality of the circumstances, we conclude the trial court's order requiring Hunter and/or her attorney to reimburse White for the $17,231 in contested attorney fees, the payment of which was the product of economic duress, was "justified under the circumstances of the case." (§ 685.070, subd. (c); see also *Hester*, *supra*, 49 Cal.App.5th at p. 679; *Rich & Whillock*, *supra*, 157 Cal.App.3d at p. 1159.)[13] In light of this conclusion and because we have found that Hunter forfeited any challenge to the court's grant of White's motion to strike the memorandum of costs and denial of Hunter's request for attorney fees, we conclude the court's March 6, 2019

---

[13] We reject Hunter's argument, made in her reply brief without citation to any authority, that if duress applies "to render a contract voidable, the legal remedies for that are 'rescission' and 'restitution,' " with a requirement that "the status quo ante needs to be restored," which in this case, according to Hunter, would require further litigation of her claim for attorney fees. Hunter's right to the disputed attorney fees has now been resolved by the trial court's order denying Hunter's request for those fees and this opinion affirming that order. Accordingly, the trial court's order for reimbursement to White of the improperly obtained $17,231 in attorney fees was wholly appropriate.

order was not an abuse of discretion.  (See *In re Marriage of Minkin*, *supra*, 11 Cal.App.5th at p. 954.)[14]

## DISPOSITION

The trial court's order is affirmed.  Costs on appeal are awarded to respondent Morris Henry White.[15]

---

[14] We find ludicrous Hunter's attempt, in her opening brief, to paint the trial court as inexperienced and uninformed about the legal issues presented. The court showed great discernment as to both the law and the facts throughout this case, and exercised its discretion in an exemplary fashion.

[15] We will not address White's one-sentence assertion in the "Conclusion" portion of his respondent's brief that he "should be entitled to and award of attorney fees . . . incurred by him in this appeal."  (See rule 8.204(a)(1)(B).)

_____

Kline, P.J.

We concur:

_____

Richman, J.

_____

Miller, J.

*In re the Marriage of White and Hunter* (A157398)

29